**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| FRASERVIEW REMANUFACTURING INC., <br><br> Plaintiff, <br><br>    v. <br><br> UNITED STATES, *et al*, <br><br> Defendant. | Court No. 22-00244 |

**ORDER**

Upon reading defendant's motion to dismiss the complaint for lack of subject-matter jurisdiction, plaintiff's response thereto, and upon consideration of all other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion be, and hereby is granted; and it is further

**ORDERED** that this case is dismissed.

_____
Judge

Dated: _____
New York, New York

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| FRASERVIEW REMANUFACTURING INC., | |
| Plaintiff, | |
| v. | Court No. 22-00244 |
| UNITED STATES, *et al*, | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade, defendant, the United States *et. al.*, respectfully requests that the Court dismiss this case for lack of subject-matter jurisdiction on the grounds set forth in the accompanying memorandum of law.

WHEREFORE, defendant respectfully asks this Court to enter an order granting our motion and dismissing this case.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By: /s/ Justin R. Miller
     JUSTIN R. MILLER
     Attorney-In-Charge
     International Trade Field Office

     /s/ Elisa S. Solomon
     ELISA S. SOLOMON
     Trial Attorney
     Department of Justice, Civil Division
     Commercial Litigation Branch
     26 Federal Plaza – Suite 346
     New York, New York 10278
     (212) 264-0583

Of Counsel:
Sabahat Chaudhary
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

*Attorneys for Defendant*

December 8, 2022

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 2

   I.    Background Concerning U.S. Department of Commerce Administrative Proceedings .. 2

   II.   CBP's Deemed Liquidation Of Entries At Issue ............................................... 4

ARGUMENT ............................................................................................................ 7

   I.    Summary Of Argument ................................................................................ 7

   II.   Standard Of Review ................................................................................... 9

   III.   The Court Lacks Jurisdiction Over This Action Pursuant To 28 U.S.C. § 1581(i) ....... 10

     A.   Jurisdiction Pursuant To 28 U.S.C. § 1581(i) Is Not Available Where A Plaintiff Could
     Have Asserted Jurisdiction Under Another Provision of 28 U.S.C. § 1581 ........................ 10

     B.   Jurisdiction Under 28 U.S.C. § 1581(a) Would Have Been Available If Plaintiff Had
     Timely Protested Those Liquidations ................................................................... 12

        1.   The Decision By CBP To Treat Fraserview's Entries As Deemed Liquidated, Albeit
        Erroneous, And CBP's Posting Of Those Liquidations, Were Protestable Decisions Under
        19 U.S.C. § 1514 .......................................................................................... 12

        2.   The Remedy Available to Plaintiff Under 28 U.S.C. § 1581(a) Was Not Manifestly
        Inadequate ................................................................................................... 22

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alden Leeds Inc. v. United States,*
34 C.I.T. 1179 (Ct. Int'l Trade 2010) ..................................................................... 19

*Alden Leeds Inc. v. United States,*
476 F. App'x 393 (Fed. Cir. 2012) ..................................................................*passim*

*Allegheny Bradford Corp. v. United States,*
342 F.Supp.2d 1162 (Ct. Int'l Trade 2004) .............................................................. 21

*American Air Parcel Forwarding Co., Ltd. v. United States,*
718 F.2d 1546 (Fed. Cir. 1983)................................................................................ 11

*ARP Materials, Inc. v. United States,*
520 F.Supp.3d 1341 (Ct. Int'l Trade 2021) .............................................................. 25

*ARP Materials, Inc. v. United States,*
47 F.4th 1370 (Fed. Cir. 2022) .................................................................. 15, 22, 23

*Belgium v. United States,*
551 F.3d. 1339 (Fed. Cir. 2009)............................................................................... 21

*Borusan Mannesmann Boru Sanayi v. Ticaret A.S.,*
578 F.Supp.3d 1333 (Ct. Int'l Trade 2022) .............................................................. 13

*Carbon Activated Corp. v. United States,*
6 F.Supp.3d 1378 (Ct. Int'l Trade 2014) .................................................................. 23

*Cemex, S.A. v. United States,*
384 F.3d 1314 (Fed. Cir. 2004)................................................................... 16, 17, 24

*Degussa Canada Ltd. v. United States,*
87 F.3d 1301 (Fed. Cir. 1996).................................................................................. 25

*Erwin Hymer Grp. N. Am., Inc. v. United States,*
930 F.3d 1370 (Fed. Cir. 2019)................................................................................ 11

*Ford Motor Co. v. United States,*
435 F.Supp.2d 1324 (Ct. Int'l Trade 2006) .............................................................. 12

*Hutchison Quality Furniture, Inc. v. United States,*
827 F.3d 1355 (Fed. Cir. 2016)................................................................................ 13

*Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC,*
938 F.3d 1355 (Fed. Cir. 2019).................................................................................. 9

*Int'l Custom Prods., Inc. v. United States,*
467 F.3d 1324 (Fed. Cir. 2006).................................................................. 11

*Juice Farms, Inc. v. United States,*
68 F.3d 1344 (Fed. Cir. 1995).............................................................*passim*

*Koyo Corp. of U.S.A. v. United States,*
497 F.3d 1231 (Fed. Cir. 2007)........................................................... 13, 14

*McNutt v. Gen. Motors Acceptance Corp.,*
298 U.S. 178 (1936).................................................................................. 9

*Nat'l Nail Corp. v. United States,*
335 F.Supp.3d 1321 (Ct. Int'l Trade 2018) ......................................... 6, 10

*Norsk Hydro Canada, Inc. v. United States,*
472 F.3d 1347 (Fed. Cir. 2006)........................................................... 15, 21

*Omni U.S.A., Inc. v. United States,*
840 F.2d 912 (Fed. Cir.1988)................................................................... 24

*Shinyei Corp. of Am. v. United States,*
355 F.3d 1297 (Fed. Cir. 2004)................................................................ 15

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998).................................................................................... 9

*Sunpreme Inc. v. United States,*
892 F.3d 1186 (Fed. Cir. 2018)........................................................... 10, 22

*Sunpreme Inc. v. United States,*
946 F.3d 1300 (Fed. Cir. 2020)................................................................ 15

*Thyssenkrupp Steel N. Am., Inc. v. United States,*
886 F.3d 1215 (Fed. Cir. 2018) ............................................................... 20

*TR Int'l Trading Co. v. United States,*
433 F.Supp.3d 1329 (Ct. Int'l Trade 2020) ............................................. 20

*United States v. Cherry Hill Textiles, Inc.,*
112 F.3d 1550 (Fed. Cir. 1997)................................................................ 21

*United States v. Cotton,*
535 U.S. 625 (2002)................................................................................... 9

*United States v. Uniroyal, Inc.,*
687 F.2d 467 (C.C.P.A. 1982) .................................................................. 11

*Wally Packaging, Inc. v. United States,*
578 F. Supp. 1408 (Ct. Int'l Trade 1984) ...................................................... 9

*Xerox Corp. v. United States,*
28 C.I.T. 1667 (Ct. Int'l Trade 2004) ......................................................... 20

*Xerox Corp. v. United States,*
289 F.3d 792 (Fed. Cir. 2002) .................................................................... 15

*Xerox Corp. v. United States,*
423 F.3d 1356 (Fed. Cir. 2005) .................................................................. 20

**Statutes**

19 U.S.C. § 1514(a) ................................................................................ *passim*

19 U.S.C. § 1514(c) ........................................................................ 8, 13, 14, 18

19 U.S.C. § 1504(d) ................................................................................ *passim*

28 U.S.C. § 1581(a) ................................................................................ *passim*

28 U.S.C. § 1581(i) ................................................................................. *passim*

**Rules**

USCIT Rule 12(b)(1) ................................................................................ 1, 9

USCIT Rule 12(h)(3) .................................................................................... 9

**Regulations**

19 C.F.R. § 159.9 ........................................................................................ 14

**Other Authorities**

*Certain Softwood Lumber Products from Canada: Preliminary Affirmative*
*Countervailing Duty Determination, and Alignment of Final Determination*
*with Final Antidumping Duty Determination*
82 Fed. Reg. 19,657 (Intl Trade Admin. April 28, 2017) ............................ 2

*Certain Softwood Lumber Products from Canada: Preliminary Affirmative*
*Determination of Sales at Less Than Fair Value*
82 Fed. Reg. 29,833 (Int'l Trade Admin. June 30, 2017) ............................ 2

*Certain Softwood Lumber Products from Canada: Antidumping Duty Order and Partial Amended Final Determination*
83 Fed. Reg. 350 (Int'l Trade Admin. Jan. 3, 2018)........................................................3

*Certain Softwood Lumber Products from Canada: Amended Final Countervailing Duty Determination and Countervailing Duty Order*
83 Fed. Reg. 347 (Int'l Trade Admin. Jan. 3, 2018)........................................................3

*Certain Softwood Lumber Products from Canada: Initiation of Antidumping and Countervailing Duty Administrative Reviews*
84 Fed. Reg. 12,209 (Int'l Trade Admin. April 1, 2019)..................................................3

*Certain Softwood Lumber Products from Canada: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2017-18*
85 Fed. Reg. 7,273 (Int'l Trade Admin. Feb. 7, 2020).....................................................3

*Certain Softwood Lumber Products from Canada: Preliminary Results of Antidumping Duty Administrative Review and Recission of Review, In Part; 2017-18*
85 Fed. Reg. 7,282 (Int'l Trade Admin. Feb. 7, 2020).....................................................3

*Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review; 2017-2018*
85 Fed. Reg. 76,519 (Int'l Trade Admin. Nov. 30, 2020).................................................3

*Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty Administrative Review; 2017-2018*
85 Fed. Reg. 77,163 (Int'l Trade Admin. Dec. 1, 2020)...................................................4

*United States-Mexico-Canada Agreement (USMCA), Article 10.12; Binational Panel review: Notice of Request for Panel Review*,
85 Fed. Reg. 82,439 (Int'l Trade Admin. Dec. 18, 2020).................................................4

*United States-Mexico-Canada Agreement (USMCA), Article 10.12; Binational Panel Review: Notice of Request for Panel Review*,
86 Fed. Reg. 5,139 (Int'l Trade Admin. Jan. 19, 2021)....................................................4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| FRASERVIEW REMANUFACTURING INC., | |
| Plaintiff, | |
| v. | Court No. 22-00244 |
| UNITED STATES, *et al*, | |
| Defendant. | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade ("USCIT"), defendant, United States *et. al.* ("Government" or "defendant"), submits this memorandum in support of its motion to dismiss for lack of subject-matter jurisdiction.

<u>**INTRODUCTION**</u>

Plaintiff, Fraserview Remanufacturing Inc. ("Fraserview" or "plaintiff") challenges a decision by U.S. Customs and Border Protection ("Customs" or "CBP") that 80 entries of softwood lumber imported by Fraserview had become liquidated by operation of law under 19 U.S.C. § 1504(d) (known as a "deemed liquidation" or a "liquidation by operation of law") and the agency's posting of liquidation notices concerning those entries.[1]

Fraserview asserts jurisdiction pursuant to 28 U.S.C. § 1581(i). *See* Summons (ECF No. 1), Compl. (ECF No.2). However, plaintiff cannot establish jurisdiction under § 1581(i), the

---

[1] The Complaint alleges that Fraserview "is the Foreign Importer of Record for all entries of softwood lumber that it exports to the United States." *See* Compl. ¶ 5. However, CBP's records reflect that the importer of record for the entries at issue was "0752615BC LTD. FRASERVIEW REMANU." Defendant does not know the relationship between these two entities. Because the Complaint appears to treat these two entities as one entity, for the purposes of the instant motion only, and without prejudice to any future position, the government has treated the plaintiff in this case, Fraserview Remanufacturing Inc., interchangeably with the importer of record, 0752615BC LTD. FRASERVIEW REMANU.

Court's residual jurisdictional provision, because plaintiff had an available and adequate remedy under the jurisdictional provision of 28 U.S.C. § 1581(a). But plaintiff failed to invoke the administrative procedures required as a precursor for establishing jurisdiction under § 1581(a), and it cannot use § 1581(i) to circumvent the requirements of § 1581(a). The government therefore moves the Court to dismiss this case for lack of subject-matter jurisdiction.

## BACKGROUND

### I.   Background Concerning U.S. Department of Commerce Administrative Proceedings

Fraserview entered the 80 entries of softwood lumber at issue as "Type 03" entries subject to antidumping duty ("AD") and countervailing duty ("CVD") duties applicable to imports of softwood lumber imported from Canada. *See* Compl. ¶ 25. At the time of these entries, in November and December 2017, the U.S. Department of Commerce ("Commerce") was engaged in AD and CVD investigations concerning imports of softwood lumber from Canada. *See* Compl. ¶¶ 23–24, 27; Compl. App. I (ECF No. 2-2).

On April 28, 2017, Commerce issued a preliminary affirmative determination for the CVD investigation. *See* Compl. ¶ 23; *Certain Softwood Lumber Products from Canada: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination with Final Antidumping Duty Determination*, 82 Fed. Reg. 19,657 (Intl Trade Admin. April 28, 2017). On June 30, 2017, Commerce issued a preliminarily affirmative determination for the AD investigation. *See* Compl. ¶ 24; *Certain Softwood Lumber Products from Canada: Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 82 Fed. Reg. 29,833 (Int'l Trade Admin. June 30, 2017). On December 29, 2017, Commerce published the final affirmative CVD order on softwood lumber from Canada, and on January 3, 2018, Commerce published final AD and amended CVD orders on softwood lumber from Canada (the "AD/CVD Orders"). *See* Compl. ¶ 27; *Certain Softwood Lumber Products from Canada:*

*Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Int'l

Trade Admin. Jan. 3, 2018); *Certain Softwood Lumber Products from Canada: Amended Final*

*Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Int'l

Trade Admin. Jan. 3, 2018).

On April 1, 2019, Commerce initiated its first administrative reviews of the AD/CVD

Orders.  *See Certain Softwood Lumber Products from Canada: Initiation of Antidumping and*

*Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 12,209 (Int'l Trade Admin. April 1,

2019) ("*Initiation of First Administrative Reviews*").  Fraserview entered the merchandise at

issue in this litigation during the time period covered by these first administrative reviews, from

June 30, 2017, through December 31, 2018 (for the AD review) and the period from April 28,

2017, through December 31, 2018 (for the CVD review).  *See id.* at 12,210.  On February 7,

2020, Commerce published the preliminary results of its first administrative reviews.  *See*

*Certain Softwood Lumber Products from Canada: Preliminary Results and Partial Rescission of*

*Countervailing Duty Administrative Review; 2017-18*, 85 Fed. Reg. 7,273 (Int'l Trade Admin.

Feb. 7, 2020) ("*Preliminary CVD Results*"); *Certain Softwood Lumber Products from Canada:*

*Preliminary Results of Antidumping Duty Administrative Review and Recission of Review, In*

*Part*; *2017-18*, 85 Fed. Reg. 7,282 (Int'l Trade Admin. Feb. 7, 2020) ("*Preliminary AD Results*")

(collectively, "Preliminary Results").  In the Preliminary Results, Commerce gave notice of its

intent to rescind administrative reviews for certain companies, however, Fraserview was not

among those companies listed for which Commerce was rescinding its review.  *See* Compl. ¶ 32;

*Preliminary AD Results*, 85 Fed. Reg. at 7,284; *Preliminary CVD Results*, 85 Fed. Reg. at 7,276.

In November and December 2020, Commerce published the final results of its first

administrative reviews.  *See Certain Softwood Lumber Products from Canada: Final Results of*

*Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 76,519 (Int'l Trade Admin. Nov. 30, 2020); *Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 77,163 (Int'l Trade Admin. Dec. 1, 2020).  Commerce subsequently published notice of a request for a panel review of these final results pursuant to the United States-Mexico-Canada Agreement ("USMCA").  *See United States-Mexico-Canada Agreement (USMCA), Article 10.12; Binational Panel Review: Notice of Request for Panel Review*, 85 Fed. Reg. 82,439 (Int'l Trade Admin. Dec. 18, 2020); *United States-Mexico-Canada Agreement (USMCA), Article 10.12; Binational Panel Review: Notice of Request for Panel Review*, 86 Fed. Reg. 5,139 (Int'l Trade Admin. Jan. 19, 2021).

## II.   <u>CBP's Deemed Liquidation Of Entries At Issue</u>

Commerce directed CBP to suspend liquidation of entries of softwood lumber from Canada on several occasions during the AD/CVD investigations and related administrative reviews, and subsequent request for a USMCA panel review.  *See* Compl. ¶¶ 23, 24, 31–34, 37, 38.

Commerce initially ordered CBP to suspend liquidation and to collect CVD and AD cash deposits on entries of softwood lumber on April 28, 2017 (in the CVD investigation) and July 10, 2017 (in the AD investigation).  *See* Compl. ¶¶ 23, 24.  Effective August 26, 2017, Commerce directed CBP to lift the suspension of liquidation of softwood lumber entries in the CVD investigation and to stop collecting CVD cash deposits for softwood lumber entries until the issuance of the final CVD determination.  *See* Compl. ¶ 26; Ex. 1 (Message No. 7240307 (August 28, 2017)).

Fraserview entered its 80 entries of softwood lumber in November and December 2017 (Compl. App. I), during the period when AD liquidations were suspended.  At the time of entry, Fraserview paid the relevant cash deposits for estimated AD duties and CBP suspended

liquidation of these entries due to the suspension of liquidation instructions issued by Commerce.[2]  *See* Compl. ¶ 25.

In April 2019, after Commerce had published its affirmative CVD and AD determinations and initiated its first administrative reviews, Commerce issued instructions to CBP to continue the suspension of liquidation for entries entered during the period of review in the CVD first administrative review, April 28, 2017, to December 31, 2018, and for entries entered during the period of review in the AD first administrative review, June 30, 2017, to December 31, 2018.[3]  *See* Compl. ¶ 31.  On March 19, 2020, after Commerce had partially rescinded its first administrative reviews for some companies, Commerce instructed CBP to liquidate entries of merchandise for those companies for which Commerce had rescinded the reviews.  *See* Compl. ¶ 33, 34; Ex. 2 (Message No. 0079405 (March 19, 2020)); Ex. 3 (Message No. 0083409 (March 23, 2020)).  In Message No. 0079405, Commerce instructed CBP "to liquidate all entries for all firms" except those identified in the notice and to and assess AD duties at the cash deposit rate in effect on the date of entry.  Ex. 2 at 3.

Message No. 0079405 did not identify the importer of record for the 80 entries at issue, 0752615BC LTD. FRASERVIEW REMANU, as a company for which suspension should be lifted.  *See* Ex. 2, ¶ 3.  However, in an apparent error in applying Message No. 0079405, on or around September 2 and 3, 2020, CBP personnel determined that Fraserview's 80 entries had

---

[2] Although the Complaint alleges that Fraserview paid AD and CVD duties (*see* Compl. ¶ 25), CBP's records reflect that Fraserview paid AD cash deposits and no CVD cash deposits because it made its entries after August 26, 2017, when, as alleged in the Complaint (*see* Compl. ¶ 26), Commerce directed CBP to stop collecting CVD cash deposits for softwood lumber entries.

[3] The Complaint asserts that Commerce instructed CBP to continue suspension of liquidation for entries entered during the period of review in the AD first administrative review, which the Complaint alleges ended December 31, 2019.  *See* Compl. ¶ 31.  However, the period of review for the first administrative review ended December 31, 2018.  *See Initiation of First Administrative Reviews*, 84 Fed. Reg. at 12, 210.

become liquidated by operation of law on August 7, 2020, pursuant to 19 U.S.C. § 1504(d).  As a result of this decision, CBP changed the status of these entries in its Automated Commercial Environment ("ACE") system to indicate that these entries had been liquidated at the entered AD rate.  Compl. ¶¶ 41–42.  CBP also posted Notices of the Deemed Liquidations on the agency's Official Notice of Extension, Suspension and Liquidation website (hereafter, "Liquidation Notices") on September 2 or September 3, 2020.  *See* Decl. of Kathy Brenske ("Brenske Declaration"), Attach. 1 (records of Liquidation Notices posted on CBP's website for the 80 entries at issue).

On June 3, 2021, nine months after CBP posted the Liquidation Notices, counsel for Fraserview contacted the CBP Center of Excellence and Expertise for Industrial and Manufacturing Materials (the "IMM Center").[4]  *See* Compl. ¶ 44; Brenske Decl., Attach. 2 (Emails between Fraserview's counsel and CBP).  In this email exchange, Fraserview's counsel identified two sets of entries: (1) the 80 entries at issue in this litigation (*i.e.*, entries made in 2017 that were covered by the first administrative reviews of the AD/CVD orders), and (2) a set of 830 entries that are not at issue in this litigation (*i.e.*, entries made in 2019 that were covered by the second administrative reviews of the AD/CVD orders).  Brenske Decl., Attach. 2 at 4–5. Fraserview's counsel requested "assistance in removing erroneous 'deemed liquidation' designations" for these entries on the ground that "[a]ll of the entries in question are subject to continued suspension of liquidation[.]"  *Id.* at 6.

---

[4] Although the Complaint sets forth some of the contents of this email exchange (Compl. ¶ 42– 43), the government has included a copy of the correspondence with its motion to dismiss. Where a motion to dismiss challenges a complaint's alleged jurisdiction, the Court is not limited to considering the factual allegations in the complaint and "'may review evidence extrinsic to the pleadings.'"  *Nat'l Nail Corp. v. United States*, 335 F.Supp.3d 1321, 1325 (Ct. Int'l Trade 2018) (internal citation omitted).

Senior Import Specialist Kathy Brenske responded to Fraserview's counsel that she "concur[ed] that the entries were deem[ed] liquidated in error" but that CBP lacked the authority to make changes to these entries. *Id*. at 4. The Senior Import Specialist advised that a protest could have been filed within 180 days of when CBP processed the deemed liquidation, *i.e.*, the date on which CBP posted the Liquidation Notices on its website, but that the date had passed for the 80 entries made in 2017. *Id.* at 4. In a later exchange, the Senior Import Specialist advised Fraserview's counsel that the 2019 entries could still be protested. *Id.* at 2. A protest concerning the 2019 entries was filed, and as a result, liquidation of those entries remains non-final and can be corrected or adjusted pending resolution of the Binational United States-Mexico-Canada Agreement Panel. *See* Brenske Decl. ¶ 8. However, for the 80 entries that are at issue in this litigation, the 180-day deadline for filing a protest had already passed and so these deemed liquidations could no longer be protested. Brenske Decl., Attach. 2 at 2.

On August 23, 2022, Fraserview commenced this civil action concerning the 80 entries of softwood lumber for which it had not filed a timely protest.

## ARGUMENT

### I.   Summary Of Argument

Plaintiff cannot establish subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(i). It is well-settled that 28 U.S.C. § 1581(i), as the Court's residual jurisdiction provision, embodies a residual grant of jurisdiction that may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.

Here, plaintiff challenges CBP's decision that plaintiff's entries had deemed liquidated and the agency's posting of Liquidation Notices on CBP's website. Plaintiff could have

protested those decisions and asked CBP to correct the errors in its decision making.[5]  If CBP

refused, plaintiff could have commenced a civil action under 28 U.S.C. § 1581(a) and sought

relief from this Court.  Plaintiff failed to avail itself of this process, and as a result, plaintiff

cannot seek relief from this Court under 28 U.S.C. § 1581(i).

Plaintiff's claims to the contrary, namely that CBP's decision that the entries at issue had

become liquidated and CBP's posting of those liquidations were not protestable decisions, is

without support.  The law instructs that an importer wishing to contest a decision by CBP that

treats entries as deemed liquidated, even if that decision is erroneous, can do so by filing a

protest with CBP pursuant to § 1514(a), and failure to file such a protest makes CBP's

determination final.  The U.S. Court of Appeals for the Federal Circuit has directly addressed the

question presented by this case and held that an erroneous determination by CBP that certain

entries had become liquidated by operation of law and the agency's posting of the Liquidation

Notices are protestable decisions over which the Court cannot exercise jurisdiction pursuant to

1581(i) after an importer failed to file a timely protest.  *See Alden Leeds Inc. v. United States*,

476 F. App'x 393, 400 (Fed. Cir. 2012) ("*Alden Leeds CAFC*").  And in fact, the deemed

liquidation of Fraserview's 2019 entries was protested, and as a result of that protest, liquidation

of those entries remains non-final and can be corrected or adjusted.

Plaintiff's alternative claim, that the remedy afforded by § 1581(a) is manifestly

inadequate, is also inconsistent with applicable law.  Specifically, plaintiff asserts that it

---

[5] As noted in Footnote 1 above, the plaintiff in this case, Fraserview Remanufacturing Inc., is not
the importer of record for the relevant entries, despite plaintiff's claims to the contrary (*see*
Compl. ¶ 5).  Because the complaint treats 0752615BC LTD. FRASERVIEW REMANU and
Fraserview Remanufacturing Inc. as one entity, this motion treats these two entities
interchangeably.  However, to have standing to file a protest, a party would have had to satisfy
the requirements of 19 U.S.C. 1514(c)(2).

reasonably expected its entries to have been suspended given the suspension instructions from Commerce, and therefore it would impose an unfair burden to expect an importer in this context to have been aware of CBP's determination that these entries had become liquidated.  However, the Federal Circuit has addressed this question and determined that an importer's lack of diligence in monitoring liquidation of its entries is not a ground for determining that a remedy pursuant to § 1581(a) was manifestly inadequate.

In sum, because plaintiff could have timely protested liquidation of its entries and contested any protest denial before this Court under § 1581(a), jurisdiction to challenge the liquidation of these entries under § 1581(i) is not available.

## II.    **Standard Of Review**

USCIT Rule 12(b)(1) directs dismissal of an action where the Court lacks subject matter jurisdiction.  *See* USCIT Rule 12(b)(1); *see also* USCIT Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Subject-matter jurisdiction "involves a court's power to hear a case, [and] it can never be forfeited or waived."  *United States v. Cotton,* 535 U.S. 625, 627 (2002).

The Court's determination of subject-matter jurisdiction is a threshold inquiry.   *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998).  Whether jurisdiction exists is a question of law for the Court.  *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019) (internal citation omitted).

When jurisdiction is challenged pursuant to Rule 12(b)(1), a plaintiff has the burden of establishing the basis for jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 188–89 (1936); *see also Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (Ct. Int'l Trade 1984) ("When the Court's jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists[.]")  Where jurisdiction is

challenged, factual allegations in the complaint "are not controlling and only uncontroverted

factual allegations are accepted as true.'" *Nat'l Nail Corp. v. United States*, 335 F.Supp.3d 1321,

1325 (2018) (internal citation omitted).  In resolving "disputed predicate jurisdictional facts, a

court is not restricted to the face of the pleadings, but may review evidence extrinsic to the

pleadings.'" *Id.*

## III.   The Court Lacks Jurisdiction Over This Action Pursuant To 28 U.S.C. § 1581(i)

### A.  Jurisdiction Pursuant To 28 U.S.C. § 1581(i) Is Not Available Where A Plaintiff Could Have Asserted Jurisdiction Under Another Provision of 28 U.S.C. § 1581

Plaintiff asserts jurisdiction under 28 U.S.C. § 1581(i).  *See* Compl. at ¶¶ 9–16.  Under 28

U.S.C. § 1581(i), the Court possesses jurisdiction to hear:

> [A]ny civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
>> (A) revenue from imports or tonnage;
>>
>> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>>
>> (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>>
>> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section.

*Id.*

It is well-settled that 28 U.S.C. § 1581(i), as the Court's residual jurisdiction provision,

"embodies a 'residual' grant of jurisdiction, and may not be invoked when jurisdiction under

another subsection of § 1581 is or could have been available, unless the remedy provided under

that other subsection would be manifestly inadequate." *Supreme Inc. v. United States*, 892 F.3d

1186, 1191 (Fed. Cir. 2018) ("*Supreme I*") (internal citation omitted); *see also Erwin Hymer*

*Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) ("[A]n 'overly broad interpretation' of § 1581(i) would otherwise 'threaten to swallow the specific grants of jurisdiction contained within the other subsections.'") (internal citation omitted).

The Federal Circuit's "'unambiguous precedents. . . make clear that [§ 1581(i)'s] scope is strictly limited,' . . . and that the protest procedure cannot be easily circumvented." *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (internal citation omitted). Thus, "where a litigant has access to [the Court] under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach complying with all the relevant prerequisites thereto." *American Air Parcel Forwarding Co., Ltd. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir. 1983) (citation omitted). As the Federal Circuit explained in *American Air Parcel*:

> "[T]he legislative history of the Customs Courts Act of 1980 demonstrates that Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service."

*Id.* (quoting *United States v. Uniroyal, Inc*., 687 F.2d 467, 471 (C.C.P.A. 1982)).

Here, had Fraserview diligently monitored its entries, it could have remedied CBP's errors by availing itself of administrative protest remedies, and if necessary, pursuing relief from this Court under 28 U.S.C. § 1581(a). But Fraserview failed to follow this process, and therefore it cannot invoke jurisdiction under 28 U.S.C. § 1581(i).

Specifically, as described in Section B.2 below, CBP's decision that the entries at issue had become liquidated by operation of law and the agency's posting of Liquidation Notices were protestable decisions under 19 U.S.C. § 1514(a)(5). In addition, as described in Section B.2 below, the protest remedy that was available to plaintiff, the denial of which would have been appealable pursuant to § 1581(a), was not manifestly inadequate. As such, the Court lacks

jurisdiction under § 1581(i) because plaintiff had an alternative and adequate remedy under

§ 1581(a).

### B. Jurisdiction Under 28 U.S.C. § 1581(a) Would Have Been Available If Plaintiff Had Timely Protested Those Liquidations

Section 1581(a) grants the Court exclusive jurisdiction over "any civil action commenced

to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of

1930." 28 U.S.C. § 1581(a).  "[A] prerequisite to the Court's 28 U.S.C. § 1581(a) jurisdiction is

the filing of a valid protest under the protest statute, 19 U.S.C. § 1514." *Ford Motor Co. v.*

*United States*, 435 F.Supp.2d 1324, 1330 (Ct. Int'l Trade 2006).  As described in more detail

below, if plaintiff had filed a timely protest pursuant to 19 U.S.C. § 1514(a), plaintiff could have

challenged any adverse decision pursuant to § 1581(a).  Instead, plaintiff failed to timely protest

CBP's decisions and filed an action pursuant to § 1581(i), in direct contravention of applicable

law.

### 1. The Decision By CBP To Treat Fraserview's Entries As Deemed Liquidated, Albeit Erroneous, And CBP's Posting Of Those Liquidations, Were Protestable Decisions Under 19 U.S.C. § 1514

19 U.S.C. § 1514(a) identifies categories of decisions by CBP that can be subject to

protest, including liquidations by operation of law pursuant to 19 U.S.C. § 1504(d)[6], and

provides in relevant part:

---

[6] 19 U.S.C. § 1504(d) describes deemed liquidation and provides, in relevant part:

> [W]hen a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is extended under subsection (b), within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry.  Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record[.]

> (a)FINALITY OF DECISIONS; RETURN OF PAPERS . . . . [A]ny clerical
> error, mistake of fact, or other inadvertence, whether or not
> resulting from or contained in an electronic transmission, adverse
> to the importer, in any entry, liquidation, or reliquidation, and,
> decisions of the Customs Service, including the legality of all
> orders and findings entering into the same, as to—
> . . .
> (5) the liquidation or reliquidation of an entry, or reconciliation as
> to the issues contained therein, or any modification thereof,
> including the liquidation of an entry, pursuant to either section
> 1500 of this title or section 1504 of this title;
> …
> shall be final and conclusive upon all persons (including the United
> States and any officer thereof) unless a protest is filed in
> accordance with this section, or unless a civil action contesting the
> denial of a protest, in whole or in part, is commenced in the United
> States Court of International Trade[.]

*Id.*  A party wishing to contest a decision by CBP must file a protest within 180 days of "the date of the decision as to which protest is made."  19 U.S.C. § 1514(c)(3); *see also Borusan Mannesmann Boru Sanayi v. Ticaret A.S.*, 578 F.Supp.3d 1333, 1345 (Ct. Int'l Trade 2022).  Where no protest is filed, the statute instructs that Custom's decision concerning liquidation of those entries become final.  *See* 19 U.S.C. § 1514(a), (b).

A liquidation that happens by operation of law under 19 U.S.C. § 1504(d) is a protestable event.  *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016) ("A deemed liquidation is a protestable event that falls squarely within the ambit of 28 U.S.C. § 1581(a).").  For example, in *Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231 (Fed. Cir. 2007), the Federal Circuit considered whether an importer could protest the liquidation of ten entries that were deemed liquidated after CBP failed to implement the final results of an administrative review, during which Commerce calculated a lower duty rate for the entries.  *Id.* at 1243.  The Court made clear that "[t]he deemed liquidation of Koyo's ten entries are

---

*Id.* (emphasis added).

protestable on the merits[,]" noting that "bulletin notices posted by Customs . . . were notices of deemed liquidations for all ten of Koyo's entries." The Court concluded that for nine entries "that were properly protested before Customs, Customs should have applied the final review results to determine the rate of duty owed by Koyo." *Id.* at 1243. As to the last entry, the Federal Circuit noted that there was an issue of fact as to whether the protest was timely and remanded the case to this Court for consideration of this factual issue.[7] Notably, the Federal Circuit made clear that there is no distinction between an unlawful actual liquidation and premature deemed liquidation pursuant to 19 U.S.C. § 1514, in that "[i]f the importer forgoes filing a timely protest, then the deemed liquidation stands and is final against the importer." *Id.*

CBP's regulations at 19 C.F.R. § 159.9 direct that protests concerning entries liquidated by operation of law, *i.e.*, deemed liquidations, must be filed within 180 days from the date the entries are deemed liquidated. The regulations also state that CBP will provide public notice of deemed liquidations on its website, as it did in this case. 19 C.F.R. § 159.9 provides, in relevant part:

> (i) Entries liquidated by operation of law at the expiration of the time limitations prescribed in section 504, Tariff Act of 1930, as amended (19 U.S.C. [§] 1504), and set out in §§ 159.11 and 159.12, will be deemed liquidated as of the date of expiration of the appropriate statutory period and will be posted on *www.cbp.gov* when CBP determines that each entry has liquidated by operation of law and will be dated with the date of liquidation by operation of law.
> . . .
> (iii) For liquidation notices posted on *www.cbp.gov,* pursuant to section 514, Tariff Act of 1930, as amended (19 U.S.C. [§] 1514) and part 174 of this chapter, . . . a protest of a decision relating to an entry made on or after December 18, 2004, within 180 days from the date of liquidation of an entry by operation of law.

---

[7] The parties ultimately settled. *See* Ct. No. 02-800, ECF No. 50.

19 C.F.R. § 159.9(c)(2)(i), (iii).

In considering whether an action taken by CBP can be protested under 19 U.S.C. § 1514, the Federal Circuit has directed that the "obligation to protest a Customs classification error . . . turns on whether Customs' classifications of the importers' entries were protestable 'decisions' under 19 U.S.C. § 1514[.]" *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022).

The law is clear that liquidation decisions by CBP, even when erroneous, are protestable through the mechanism established by 19 U.S.C. § 1514(a), and where no such protest is filed, those decisions become final. *See, e.g.*, *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1352 (Fed. Cir. 2006) ("A liquidation decision itself is 'final and conclusive' as to all parties . . . unless protested with Customs, and this is so even if the liquidation contains a 'clerical error, mistake of fact, or other inadvertence' adverse to the importer." (citing 19 U.S.C. § 1514(a))); *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1311 (Fed. Cir. 2004) ("Section 1514(a) . . . is fairly construed to prohibit a challenge to 'decisions' of the Customs Service 'as to' liquidation outside the protest provisions of section 1514(a)"); *Xerox Corp. v. United States*, 289 F.3d 792, 795 (Fed. Cir. 2002) (holding that where CBP misapplied a Commerce order, "correcting such a ministerial, factual error of Customs is not the province of Commerce" but is instead "properly the subject of a protest under 19 U.S.C. § 1514(a)(2).").[8] These cases follow the precedent established in *Juice Farms, Inc. v. United States,* 68 F.3d 1344,

---

[8] *Xerox* was overruled by the Federal Circuit in *Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) ("*Sunpreme II*") but only "to the extent any portions . . . could be read as contrary" to the holding in *Sunpreme*, which involved CBP's authority to suspend liquidation of goods that it determined to fall within the scope of an ambiguous AD/CVD order. *Id.* at 1321. Nothing in *Sunpreme* overturned the holding in *Xerox* that CBP's "misapplication" of Commerce's order involves a protestable decision.

1345 (Fed. Cir. 1995), in which the U.S. Customs Service, the predecessor agency to CBP, had erroneously liquidated twenty entries of orange juice despite suspension orders that were in place.  The Federal Circuit found that Customs' "admittedly premature liquidations" of entries became final pursuant to 19 U.S.C. § 1514 when the plaintiff failed to protest them because "all liquidations, whether legal or not, are subject to the timely protest requirement."  *Id.* at 1346.

Likewise, the law is clear that decisions by CBP that treat entries as deemed liquidated, even when those decisions are erroneous, and the posting of the notice of those deemed liquidations, are also protestable decisions.  For example, in *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Dec. 14, 2004), the Federal Circuit considered whether CBP's publication of a notice stating that certain entries were deemed liquidated at a preliminary AD rate rather than the final, higher AD rate despite Commerce having suspended liquidating during an administrative review, was a protestable decision.  *Id.* at 1316.  In March 1998, Commerce issued to CBP non-public instructions to liquidate at the higher final rate after the final results of the administrative review were issued.  CBP correctly liquidated some entries at the final AD rate in 1998.  However, in April 2001, CBP posted a public bulletin notice stating that certain remaining entries had deemed liquidated six months after March 1998 at the lower preliminary duty rate, rather than the final rate.  *Id.* at 1317.  The Federal Circuit found that the non-public liquidation instructions issued by Commerce were premature and otherwise ineffective to trigger the six-month deemed liquidation period under § 1504(d).  *Id.* at 1321.  Nevertheless, the Federal Circuit found that Customs' "erroneous notice of deemed liquidation became final and conclusive" when no timely protest was filed.  *See id.* at 1324–25.  The Federal Circuit noted that "Customs chose to effect their liquidation by posting the Bulletin Notices" and that the posting is "[m]ore than passive or

ministerial, Customs' actions constitute a 'decision' within the context of section 1514(a)." *Id.* As *Cemex* makes clear, CBP's decision here that the entries had become liquidated, and the agency's posting of Liquidation Notices, even if erroneous, "fall[] within the ambit of section 1514(a)(5), which shields such decisions from challenge [if no protest is filed], without regard for their legality." *Id.* at 1324.

The Federal Circuit's decision in *Alden Leeds* directly addresses the question presented by Fraserview's entries. That case involved a situation, like here, where CBP posted a Bulletin Notice of Liquidation that certain entries of imported merchandise were deemed liquidated despite instructions from Commerce to continue suspension of liquidation pending the outcome of an administrative review. *See Alden Leeds CAFC*, 476 F. App'x at 395. The importer failed to protest the posting of the Bulletin Notice but later sought a refund of the difference between the estimated deposit rate and the final rate determined in the administrative review. *See id.* at 395. The Federal Circuit relied on precedents in *Juice Farms* and *Cemex* to hold that an importer faced with an erroneous decision by CBP that entries have deemed liquidated can protest that decision pursuant to 19 U.S.C. § 1504(d). *See id.* at 400 ("We are bound by the decisions in *Cemex* and *Juice Farms*, and find that they are dispositive in this case."). Specifically, the Federal Circuit held that CBP had made protestable decisions where the agency erroneously determined that certain entries had deemed liquidated despite an ongoing suspension order, and then posted a Bulletin Notice concerning those liquidations. *See id.* at 400.

As these cases make clear, the decision by CBP that plaintiff's entries had deemed liquidated, and the agency's posting of Liquidation Notices were not ministerial steps taken by the agency. Rather, in deciding that these entries had become liquidated, even if mistaken, and in posting Liquidation Notices, the agency made protestable decisions. As such, plaintiff could

have protested these decisions, and given the lack of protest, the deemed liquidation of these entries became final.  *See* 19 U.S.C. § 1514(c)(3).  And in fact, the deemed liquidation of the 2019 entries was protested with CBP, and, as a result of that protest, liquidation of those entries remains non-final and can be corrected or adjusted pending resolution of the Binational United States-Mexico-Canada Agreement Panel.

Plaintiff alleges that "no protestable action or decision occurred" (Compl. ¶ 11) based on two claims that are not supported by the law.  First, plaintiff alleges that there were no "clerical errors, mistakes of fact, or other inadvertence 'in any entry, liquidation, reliquidation' because the statutory conditions for deemed liquidation do not exist and CBP's designation of the entries as deemed liquidated is therefore without effect . . . [and] remain suspended pursuant to 19 U.S.C. § 1504(d)."  Compl. ¶ 12.  In other words, plaintiff asserts that there was no protestable clerical error in connection with the deemed liquidation because, in fact, the liquidation did not occur.  Second, Fraserview alleges, that "errors that do not occur in an 'entry, liquidation, or reliquidation' may only be protested if they constitute 'decisions'" within the meaning of 19 U.S.C. § 1514(a).  Compl. ¶ 11 (citing 19 U.S.C. § 1514(a)).  Here, plaintiff claims that no such decision took place on the ground that "[t]he electronic selection of 'deemed liquidated' within ACE by an import specialist, without any analysis, written record of the reason for [] designation, deliberation" does not evidence decision-making.  *Id*. at ¶ 13.

These claims miss the mark and impose requirements beyond that identified in 19 U.S.C. § 1514(a).  As described above, the Federal Circuit has held that a decision by CBP to liquidate an entry, or a decision to treat an entry as deemed liquidated by operation of law, are protestable under 19 U.S.C. § 1514 and those decisions remain final if not protested.  That the entries at issue in this case were deemed liquidated, as opposed to actually liquidated, is of no consequence

because, as described above, the Federal Circuit has extended the holding of *Juice Farms* to the context of deemed liquidations. *See, e.g.*, *Alden Leeds Inc.*, 476 F. App'x at 398.

The Federal Circuit's opinion in *Alden Leeds*, described above, rejected similar arguments to the one made by plaintiff in the Complaint. There the Government moved to dismiss for lack of jurisdiction under § 1581(i) on the basis that plaintiff had an adequate remedy under § 1581(a) but plaintiff failed to pursue its protest remedies. This Court denied the government's motion to dismiss, holding that "Customs' posting of the Bulletin Notice was a legal nullity" and therefore "Alden Leeds was not required to protest Customs' legally inconsequential Bulletin Notice." *Alden Leeds Inc. v. United States*, 34 C.I.T. 1179, 1189 (Ct. Int'l Trade 2010), *rev'd in part, vacated in part*, 476 F. App'x 393 (Fed. Cir. 2012). However, the Federal Circuit *reversed* this conclusion. *See Alden Leeds CAFC*, 476 F. App'x at 400. The Federal Circuit agreed that "the entries were not actually deemed liquidated by operation of law, because the prerequisites for deemed liquidation had not occurred[.]" *Id.* Nevertheless, the Federal Circuit concluded that CBP's "decision to post the Bulletin Notice and decision to treat the entries as liquidated were protestable decisions under § 1514(a), regardless of their accuracy." *Id.* The Federal Circuit ultimately concluded that jurisdiction pursuant to § 1581(i) was not available "[b]ecause the importer could have challenged the legality of the admittedly premature liquidations by filing a protest under 19 U.S.C. § 1514(a), and then sought judicial review under § 1581(a)[.]" *Id.* at 398–99. Thus, contrary to plaintiff's suggestion (Compl. ¶ 12), *Alden Leeds* directly contradicts the position taken by plaintiff in the Complaint.

Plaintiff's citation of *Xerox Corp. v. United States*, 423 F.3d 1356, 1363 (Fed. Cir. 2005) ("*Xerox Corp CAFC*") (Compl. ¶ 13), is likewise misguided. In that case, this Court and Federal Circuit considered whether liquidation by Customs of goods as entered, rather than at a more

preferential rate pursuant to the North American Free Trade Agreement ("NAFTA"), was a

protestable decision.  *Id.* at 1365.  This Court held, and the Federal Circuit affirmed, that there

was no valid protest because the importer had failed to follow the statutory requirements for

requesting status under NAFTA and therefore, "the issue of whether the subject merchandise was

eligible for the NAFTA preference was simply never before Customs."  *Xerox Corp. v. United*

*States*, 28 C.I.T. 1667, 1670–71 (Ct. Int'l Trade 2004), *aff'd*, 423 F.3d 1356 (Fed. Cir. 2005).

This Court therefore dismissed the action, determining there was no valid protest from which the

Court could hear an appeal pursuant to § 1581(a).  *Id.*; *see also Xerox Corp CAFC,* 423 F.3d at

1365 ("Customs at no time expressly considered the merits of NAFTA eligibility, nor could it

without a valid claim by Xerox for such eligibility.  We thus hold that it did not make a

protestable decision to deny Xerox NAFTA treatment in this case.").[9]  The holding in *Xerox*

therefore is inapposite to the question here, which is whether a decision by CBP that the entries

had deemed liquidated and posting notice of those liquidations were protestable decisions.  And,

as the other cases discussed herein make clear, CBP's actions were in fact protestable under 19

U.S.C. § 1514(a).

        Plaintiff's suggestion that the clerical error at issue in this case could not have been

corrected through a protest also ignores that the purpose of the protest provisions in § 1514 is to

---

[9] Numerous other cases have held that CBP may make protestable decisions in the process of implementing another agency's instructions or orders.  *See*, *e.g.*, *Belgium v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009) ("If the liquidation order [from Commerce] is clear, but is being improperly applied by Customs, then Customs's actions can be challenged under 28 U.S.C. § 1581(a)"); *see also TR Int'l Trading Co. v. United States,* 433 F.Supp.3d 1329, 1341 (Ct. Int'l Trade 2020) (CBP's "factual or procedural errors" with respect to implementing an AD/CDV order are protestable).  In such cases, the *"*purpose of the protest mechanism [is] to allow agency consideration of issues after an initial liquidation determination." *See Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1224 (Fed. Cir. 2018).

give the agency an opportunity to resolve issues, including clerical errors, and to avoid

unnecessary judicial intervention.  As the Court has described:

> In creating the § 1514 protest procedure, Congress expressed a
> preference for administrative protest as a precursor to judicial
> review. . . . .  Recognizing the import of § 1514, the courts rejected
> the proposition that, where a Customs decision violated an
> existing *agency* order, the decision was void and the party was able
> to bypass the requirements of the protest procedure.  *See United
> States v. Cherry Hill Textiles, Inc.,* 112 F.3d 1550, 1557 (Fed. Cir.
> 1997) ("the underlying policy of section 1514 . . . is to channel
> challenges to liquidations through the protest mechanism")[.]

*Allegheny Bradford Corp. v. United States*, 342 F.Supp.2d 1162, 1167 (Ct. Int'l Trade 2004).

The issue in the immediate case highlights exactly the type of efficiency that Congress

had in mind in creating this protest procedure, which gives CBP an opportunity to correct errors,

like the ones at issue here, if a party acting diligently concerning its entries protests the decision.

In a similar vein, the statute grants Customs with the opportunity to "*sua sponte* reliquidate an

entry, including an entry 'deemed liquidated,' within 90 days of its giving notice of the original

liquidation to the importer."  *Norsk Hydro Canada*, 472 F.3d at 1352 (citing 19 U.S.C. § 1501).

The statute, by design, avoids involvement by the Court for errors that can be resolved by the

agency through the administrative protest mechanism, and reserves judicial intervention only

when the agency and aggrieved party have a legitimate dispute concerning the alleged error.

However, where a party fails to identify errors to CBP in a timely manner, the interests of

protecting administrative agency authority and judicial efficiency prevail.  Similarly, as

described below, Fraserview's lack of diligence does not make the available remedy under

§ 1581(a) manifestly inadequate.

## 2. The Remedy Available to Plaintiff Under 28 U.S.C. § 1581(a) Was Not Manifestly Inadequate

As described above, plaintiff's remedy under 28 U.S.C. § 1581(a) forecloses jurisdiction under 28 U.S.C. § 1581(i), unless that remedy was "manifestly inadequate." *Sunpreme I*, 892 F.3d at 1191.  A remedy that is manifestly inadequate is "an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *ARP Materials*, 47 F.4th at 1379 (citing *Sunpreme I*, 892 F.3d at 1193–94). For the reasons explained below, plaintiff's remedy under § 1581(a) was not manifestly inadequate.

As is relevant to this motion, failure to timely file a protest contesting an action taken by CBP does not render the remedy available under CBP's administrative protest scheme "manifestly inadequate."  *See ARP Materials*, 47 F.4th at 1373 ("[J]urisdiction would have been available under § 1581(a) had the importers timely protested Customs' classification decisions and because failure to invoke an available remedy within the timeframe prescribed does not render the remedy manifestly inadequate."); *see also Juice Farms,* 68 F.3d at 1346 (same); *Carbon Activated Corp. v. United States*, 6 F.Supp.3d 1378, 1381 (Ct. Int'l Trade 2014), *aff'd*, 791 F.3d 1312 (Fed. Cir. 2015) (same).  As described in the preceding section, CBP made protestable decisions in determining that the 80 entries at issue had become liquidated and in posting Liquidation Notices, concerning which Fraserview could have filed a protest with CBP.

Plaintiff claims that the remedy provided by § 1581(a) is manifestly inadequate on the ground that it would be "unreasonable" to expect that Frasierview continuously monitor the status of its entries when "liquidation [of its entries was] legitimately suspended" (Compl. ¶ 3) and when "CBP designated the entries in question as 'deemed liquidated' nearly a month after the statutory date of such purported deemed liquidation" (Compl. ¶ 14).  Essentially, Fraserview

claims that jurisdiction under § 1581(a) is manifestly inadequate because CBP did not post notice of the liquidations "during the six month time period following the publication of the partial rescissions" of the First Administrative Reviews, *i.e.*, by August 7, 2020, as opposed to on September 2–3, 2020, when CBP posted the Liquidation Notices on CBP's website. *See* Compl. ¶ 41.

This claim, again, misses the mark. As an initial matter, even according to CBP's erroneous reading of the suspension instructions from Commerce, CBP would not have posted Liquidation Notices prior to August 7, since the entries would not have deemed liquidated (under CBP's application of the instructions) until that date. So plaintiff's complaint is essentially that CBP needed to post the Liquidation Notices immediately after August 7, rather than roughly 30 days later. Plaintiff's argument on this issue is directly contradicted by the Federal Circuit's holding in *Cemex*, describe above, where the Court held a protest was the correct avenue to correct liquidations posted by CBP in 2001 concerning deemed liquidations that the agency said had occurred several years prior, in 1998. *See Cemex*, 384 F.3d at 1317.

As to plaintiff's claim that it would be too burdensome to monitor the liquidation status of its entries, the Federal Circuit has repeatedly rejected this argument in procedurally indistinguishable cases. Specifically, the Federal Circuit has held that when importers miss the protest period due to their own lack of diligence, they forego the opportunity to invoke this remedy. In *Juice Farms,* for example, the importer did not learn that CBP had erroneously liquidated its entries until after the protest period had passed. *See Juice Farms*, 68 F.3d at 1346. Like the arguments made by Fraserview in this case, Juice Farms had argued that it failed to file a timely protest because Commerce had ordered suspension of liquidation pending administrative review. *Id.* However, the Court rejected this argument and held that bulletin

23

notices of the liquidations posted by CBP "suppl[ied] sufficient notice and thus trigger[ed] the . . . period for protests." *Id.*  In so doing, the Court explained that "the importer[] bears the burden to check for posted notices of liquidation and to protest timely[,]" and it "cannot circumvent the timely protest requirement by claiming that its own lack of diligence requires equitable relief under 28 U.S.C. § 1581(i)." *Id.* at 1346.  Therefore, "a remedy is not inadequate 'simply because appellant failed to invoke it within the time frame it prescribes.'" *Id*. (citing *Omni U.S.A., Inc. v. United States*, 840 F.2d 912, 915 (Fed. Cir. 1988)).

In *Alden Leeds*, the Federal Circuit concluded that the importer had not shown that the relief set forth in § 1581(a) would have been manifestly inadequate, explaining that although the liquidation posted in "the Bulletin Notice was premature, Alden Leeds bore the burden of examining it and filing a protest within the statutory time period." *Alden Leeds Inc.*, 476 F. App'x at 401.  The Court noted, "[w]hile we are not unsympathetic to the burden this places on importers, the governing statutes provide a specific procedure for protesting Customs' liquidation decisions, and our prior case law is clear that this procedure applies with equal force to erroneous liquidation decisions." *Id*. at 401.  The Court concluded that the importer had an adequate remedy available under § 1581(a), but failed to pursue it, and thus jurisdiction under § 1581(i) was unavailable.

Like the plaintiff in *Juice Farms* and *Alden Leeds*, plaintiff had an obligation to monitor all relevant public information.  This information, namely the posting of Liquidation Notices on CBP's website, would have informed plaintiff of CBP's decision to treat plaintiff's entries as deemed liquidated.  As the Federal Circuit has explained, "bulletin notices supply sufficient notice and thus trigger the . . . period for protests." *Juice Farms*, 68 F.3d at 1346.  By failing to file a protest in a timely manner, plaintiff "regrettably dropped the ball," and its failure to do so

does not grant the Court jurisdiction under § 1581(i).  *ARP Materials, Inc. v. United States*, 520 F.Supp.3d 1341, 1362 (Ct. Int'l Trade 2021), *aff'd*, 47 F.4th 1370 (Fed. Cir. 2022) (citing *Degussa Canada Ltd. v. United States*, 87 F.3d 1301, 1304 (Fed. Cir. 1996) (an importer's "unfortunate situation of having paid a duty that, it subsequently turned out, it should not have paid, is of its own making . . . [and] could have avoided the problem if it had filed a timely protest[.]")).

In sum, plaintiff cannot circumvent the statutory requirements for filing timely protests and, if necessary, initiating an action pursuant to § 1581(a), by bringing an action under § 1581(i).  To allow otherwise would contravene the law limiting the scope of § 1581(i)'s residual jurisdiction to cases where plaintiff had no other jurisdictional avenue available for its claim.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court grant our motion and dismiss this case for lack of subject-matter jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By: /s/ Justin R. Miller
     JUSTIN R. MILLER
     Attorney-In-Charge
     International Trade Field Office

     /s/ Elisa S. Solomon
     ELISA S. SOLOMON
     Trial Attorney
     Department of Justice, Civil Division
     Commercial Litigation Branch
     26 Federal Plaza – Suite 346
     New York, New York 10278
     (212) 264-0583

Of Counsel:
Sabahat Chaudhary
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

*Attorneys for Defendant*

December 8, 2022

**CERTIFICATE OF COMPLIANCE**

I, Elisa S. Solomon, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of the Government's motion to dismiss, dated December 8, 2022, relying on the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the limitation under the Court's chambers procedures, and contains 8,709 words and 25 pages.

/s/ Elisa S. Solomon