# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE TIMOTHY M. REIF

| | |
|---|---|
| FRASERVIEW REMANUFACTURING INC., | |
|    Plaintiff, | |
| vs. | **Court No. 22-00244** |
| UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; CHRIS MAGNUS, in his official capacity as Commissioner of U.S. Customs & Border Protection, | |
|    Defendants. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Fraserview Remanufacturing Inc.*

Dated: January 12, 2023

## TABLE OF CONTENTS

I.      Factual Background _____ 1

II.     Summary of Argument _____ 2

III.    The Entries Are Not Liquidated. _____ 4

   A.   Liquidation by operation of law is governed by 19 U.S.C. § 1504(d). _____ 4

   B.   This Court and the CAFC have held that where the statutory conditions for deemed liquidation are not present, the posting of notice by CBP of deemed liquidation does not result in liquidation of the entries in question. _____ 5

   C.   Because the § 1504(d) conditions are not present with regard to the Entries, deemed liquidation has not occurred; accordingly, the Entries remain unliquidated. _____ 6

IV.     Description of the Contested Issue _____ 7

V.      The Contested Issue is Not a Protestable "Decision" Under 19 U.S.C. § 1514(a).  __ 8

   A.   With very limited exceptions, the word "decisions" in § 1514(a) refers only to decisions upon liquidation of an entry. _____ 8

   B.   This Court has expressly ruled in LG Electronics that erroneous notices of deemed liquidation, if issued while a Commerce order of suspension is in effect, are not protestable under 19 U.S.C. § 1514(a) and that jurisdiction is therefore available under 28 U.S.C. § 1581(i). _____ 11

VI.     Mistakes of Law are Not Protestable; Clerical Errors, Mistakes of Fact and Other Inadvertence Cannot Be Protested Prior to Liquidation_____ 14

   A.   Protestable clerical errors, mistakes of fact, and other inadvertence must be defined consistently with now-repealed Section 520(c). _____ 15

   B.   The contested issue, at its heart, is a mistake of law, and therefore is not protestable.__ 16

   C.   Clerical errors, mistakes of fact and other inadvertence are not protestable prior to liquidation because they are not final or conclusive._____ 18

VII.    Even If The Entries Were Protestable Under 514(a), the Time For Filing of a Protest Has Not Yet Commenced Under Section 514(c)(3). _____ 19

   A.   Protest is not available under 514(c)(3)(A) because the Entries are not yet liquidated. _ 20

   B.   Protest is also not available under 514(c)(3)(B) because subparagraph (A) is not "inapplicable."_____ 20

   C.   Cases finding protest premature because the entry was not yet liquidated and therefore not ripe for protest under 514(c)(3)(A). _____ 24

VIII.   Cases Cited By Defendant Are Irrelevant, Distinguishable, or Unpersuasive ____ 25

   A.   The cases cited by Defendant regarding protest of "premature" or unlawful liquidation pursuant to 19 U.S.C. § 1500 are not relevant to the contested issue. _____ 25

B.    The cases cited by Defendant in which the conditions in § 1504 were present and liquidation by operation of law actually occurred are likewise inapposite. _____ 27

C.    Cemex is distinguishable from the case at issue. _____ 29

D.    Alden Leeds II is nonprecedential and lacks persuasive reasoning, and should be disregarded as a result. _____ 32

　　1.    Nonprecedential opinions are to be considered only to the extent that they provide "guidance or persuasive reasoning." _____ 32

　　2.    Alden Leeds II misinterprets and overlooks earlier caselaw and as such is not persuasive. _____ 34

**IX.    If Protest Is Found To Be Available Upon Actual Liquidation of the Entries, Such Protest Would Be Manifestly Inadequate. _____ 34**

**X.    Conclusion _____ 35**

## <u>TABLE OF AUTHORITIES</u>

### <u>Statutes</u>

19 U.S.C. § 1499…………………………………………………………………11, 22

19 U.S.C. § 1500………………………………………………………………..3, 7, 17, 26

19 U.S.C. § 1504………………………………………………………………….passim

19 U.S.C. § 1514………………………………………………………………….passim

19 U.S.C. § 1520………………………………………………………………….passim

28 U.S.C. § 1581………………………………………………………………….passim

Public Law 95-410, 92 Stat. 888, § 209 (October 3, 1978)……………………………….....10

Public Law 103-182, 197 Stat. 2204 § 641 (December 8, 1993)…………………………....10

Miscellaneous Trade and Technical Corrections Act of 2004, P.L. 108-429,
118 Stat. 2434 (December 3, 2004)…………………………………………………….....16

### <u>Regulations</u>

19 C.F.R. § 10.871…………………………………………………………………..22

19 C.F.R. § 159.9………………………………………………………………….passim

19 C.F.R. § 159.10…………………………………………………………………..20

19 C.F.R. § 174.11………………………………………………………………….8, 20-21

19 C.F.R. § 174.12………………………………………………………………….20-22

### <u>Cases</u>

*27-35 Jackson Ave. LLC v. United States*, 162 Fed. Cl. 550 (2022)……………………………33

*Alden Leeds Inc. v. United States*, 721 F. Supp. 2d 1322 (Ct. Int'l Tr., 2010)…………………6

*Alden Leeds Inc. v. United States*, 476 Fed. Appx. 393

(Fed. Cir. 2012) (nonprecedential opinion)…………………………………………..5-7, 32, 34

*Am. Permac, Inc. v. United States,* 642 F. Supp. 1187 (Ct. Int'l Tr. 1986)………………………6

*American Export Lines, Inc. v. United States*, 496 F. Supp. 1320 (Cust. Ct. 1980)…………..23

*ARP Materials, Inc. v. United States*, 47 F.4th 1370 (Fed. Cir. 2022)……………………...27, 35

*Aviall of Texas, Inc. v. United States*, 70 F. 3d 1248 (Fed. Cir. 1995)…………………………..16

*Borusan Mannesmann Boru Sanayi Ve Ticaret AS v. United States*,
578 F. Supp. 3d 1333 (Ct. Int'l Tr. 2022)………………………………………………………10-11

*Brown v. Gardner,* 513 U.S. 115 (1995)…………………………………………………………22

*Cemex, SA v. United States*, 384 F.3d 1314 (Fed. Cir. 2004)………………….....5, 13-14, 29-32

*Chemsol, LCC v. United States,* 901 F. Supp.2d 1362, 1366 (Ct. Int'l Tr. 2013)………….3, 7, 10

*Commonwealth Oil Refining Co., Inc. v. United States*, 332 F. Supp. 203
(Cust. Ct. 1971)……………………………………………………………………………………9

*Dart Export Corp. v. United States*, 43 C.C.P.A. 64 (Ct. Cust. & Pat. App. 1956)…………...9-10

*Degussa Canada Ltd. v. United States*, 87 F. 3d 1301 (Fed. Cir. 1996)……………………16, 27

*Executone Information Systems v. United States*, 96 F. 3d 1383 (Fed. Cir. 1996)………………16

*George v. McDonough*, 991 F.3d 1227 (Fed. Cir. 2021)…………………………………….33-34

*Greenstreet v. Social Security Admin.*, 543 F.3d 705 (Fed. Cir. 2008)…………………………33

*Fujitsu General America, Inc. v. United States*, 283 F.3d 1364 (Fed. Cir. 2002)………………..5

*Hambro Automotive Corporation v. United States*, 603 F. 2d 850 (CCPA 1979)………………16

*Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355 (Fed. Cir. 2016)…………...28

*International Customs Products, Inc. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006)……..2, 34

*J.S. Sareussen Marine Supplies, Inc. v. United States*, 304 F. Supp. 1185 (1969)………………18

*Juice Farms, Inc. v. United States,* 68 F.3d 1344 (Fed. Cir. 1995)…………………………..25-26

*Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231 (Fed. Cir. 2007)……………………28-29

*LG Electronics USA, Inc. v. United States*, 991 F. Supp. 668 (Ct. Int'l Tr. 1997)……..3, 5, 11-14

*McDonnel Douglas Corp. v. United States*, 75 Cust. Ct. 6 (Cust. Ct. 1975)………………...10, 25

*Norcal/Crosetti Foods Inc. et.al v. United States et. al,* 963 F.2d 356 (Fed. Cir. 1992)……..34-35

*Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347 (Fed. Cir. 2006)………………..7, 13, 28

*PPG Industries, Inc., v. United States*, 7 C.I.T. 118 (1984)……………………………………..15

*PrimeSource Building Products, Inc. v. United States*, 497 F. Supp. 3d 1333
(Ct. Int'l Tr. 2021)………………………………………………………………………....22-23

*Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004)…………………………27

*Tak Yuen Corp. v. United States* 29 C.I.T. 543 (2005)…………………………………………..25

*Thyssenkrupp Steel North America, Inc. v. United States*, 886 F.3d 1215
(Fed. Cir. 2018)……………………………………………………………………….3, 4, 25

*TR Int'l Trading Co. v. United States,* 433 F.Supp.3d 1329 (Ct. Int'l Trade 2020)…………….28

*Trendium Pool Products, Inc. v. United States,* 399 F. Supp. 3d 1335 (Ct. Int'l Tr. 2019)……..33

*United States v. American Home Assur. Co.*, 35 C.I.T. 585 (2011)………………………………4

*United States v. Boe*, 543 F.2d 151 (C.C.P.A. 1976)……………………………………...3, 9-10, 24

*United States v. B. Holman Inc.*, 29 C.C.P.A. 3 (Ct. Cust. & Pat. App. 1941)……………………9

*United States v. Cherry Hill Textiles, Inc.,* 112 F.3d 1550 (Fed. Cir. 1997)……………………27

*United States v. Reliable Chemical Co.*, 605 F.2d 1179 (CCPA 1979)…………………………25

*Xerox Corp. v. United States*, 289 F.3d 792 (Fed. Cir. 2002)……………………………………26

**<ins>Other Authority</ins>**

CBP, "Technical Corrections: Matters Subject to Protest and Various Protest
Time Limits," 76 Fed. Reg. 2573 (January 14, 2011) ("Technical Corrections")…………...15, 20

Commerce Message No. 9114305 (April 24, 2019)…………………………………………………1

Commerce Message No. 9113306 (April 23, 2019) ………………………………………………..1

Commerce Message No. 1033410 (February 2, 2021) …………………………………………...1

Commerce Message No. 1057401 (February 26, 2021) …………………………………………1

Commerce Message No. 1025402 (January 25, 2021) …………………………………………...1

HQ 115811 (April 22, 2003)……………………………………………………………………...11

HQ 228891 (January 8, 1997)……………………………………………………………………11

HQ 223547 (March 11, 1992)…………………………………………………………………...11-12

HQ 228020 (April 21, 2000)……………………………………………………………………18

Federal Circuit Rule 32.1…………………………………………………………………..32-33

Plaintiff Fraserview Remanufacturing, Inc. ("Plaintiff" or "Fraserview") herein responds to Defendant's Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss").  Fraserview respectfully submits that jurisdiction is available in this case pursuant to 28 U.S.C. § 1581(i), and requests that this Court exercise that jurisdiction to allow the case to be heard on the merits. Fraserview further requests that this Court declare CBP's designation of the entries at issue as "deemed liquidated" to be erroneous and without effect, and order Defendants to correct its erroneous designation as to liquidation.

## I.    <u>Factual Background</u>

The facts of this case are not in dispute.  Fraserview entered the 80 entries of softwood lumber from Canada at issue in this case (hereafter, "Entries") during November and December 2017 as Type 03 entries subject to antidumping and countervailing duty ("AD/CVD") investigations A-122-857 and C-122-858, and paid antidumping duty cash deposits on the entries.  The entries were suspended at entry pursuant to Commerce instructions.  As a result of Fraserview's timely requests for administrative review for the period of review covering the Entries, the U.S. Department of Commerce ("Commerce") issued instructions to U.S. Customs & Border Protection ("CBP") to continue suspension of liquidation of the Entries pending completion of the administrative reviews.  *See* Commerce Message No. 9114305 (April 24, 2019). Upon the filing of requests for USMCA Article 10.12 Panel Reviews of the final administrative review determinations, Commerce issued additional instructions to continue suspension of liquidation pending a final decision from the USMCA Bi-National Panel.  *See* Commerce Message No. 1033410 (February 2, 2021); Commerce Message No. 1057401 (February 26, 2021); Commerce Message No. 1035404 (February 4, 2021).  Commerce has not

published instructions lifting suspension of liquidation of the Entries; accordingly liquidation

remains suspended with regard to the Entries pursuant to Commerce instructions.

On September 3, 2020, CBP changed the designation of the Entries in ACE and on its

public website from "suspended" to "deemed liquidated," and listed the date of deemed

liquidation as August 7, 2020, despite the fact that suspension of liquidation had not been lifted

and therefore liquidation by operation of law could not have taken place.

Defendant does not dispute that suspension instructions covering the Entries remained in

place as of both August 7, 2020 and September 3, 2020, and that CBP's designation of the

Entries as deemed liquidated was incorrect.  However, Defendant maintains that Fraserview was

required to file a protest within 180 days from September 3, 2020 in order to correct this error.

## II.    **Summary of Argument**

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1581(i), because the

issues raised herein relate to CBP's administration and enforcement with respect to duties, taxes

and fees on the import of merchandise.  Jurisdiction under § 1581(i) is appropriate because

jurisdiction under § 1581(a) is not available and could not have been available, and because even

if § 1581(a) jurisdiction could theoretically become available in the future, such remedy would

be manifestly inadequate.  *See International Customs Products, Inc. v. United States*, 467 F.3d

1324, 1327 (Fed. Cir. 2006).

Jurisdiction under 28 U.S.C. § 1581(a) is not and was not ever available for a deceptively

simple reason: the Entries remain unliquidated.  Liquidation by operation of law pursuant to 19

U.S.C. § 1504(d) occurs only when the conditions specified in that provision – lifting of

suspension of liquidation, notice to CBP of lifting of suspension of liquidation, and CBP failure

to affirmatively liquidate within six months of receiving the notice – have occurred.  Unlike in

the case of liquidation pursuant to CBP's authority in 19 U.S.C. § 1500(d), the posting of notice of deemed liquidation does not and cannot cause liquidation to occur.  Therefore, because suspension of liquidation was not lifted and no notice of lifting of suspension was provided to CBP, liquidation of the Entries by operation of law has not occurred.  CBP has also not affirmatively liquidated the Entries pursuant to 19 U.S.C. § 1500, and therefore the Entries remain unliquidated.

Protestable "decisions" as to liquidation or reliquidation of entries, including liquidation pursuant to 19 U.S.C. § 1504, occur only upon liquidation of entries.  *See* 19 U.S.C. § 1514(a)(5); *LG Electronics USA, Inc. v. United States*, 991 F. Supp. 668 (Ct. Int'l Tr. 1997); *United States v. Boe*, 543 F.2d 151 (C.C.P.A. 1976); *Chemsol, LCC v. United States,* 901 F. Supp.2d 1362, 1366 (Ct. Int'l Tr. 2013).  Likewise, clerical errors, mistakes of fact and other inadvertence are protestable only with respect to an "entry, liquidation, or reliquidation."  *See* 19 U.S.C. § 1514(a).  Therefore, since the Entries are not liquidated, they are not protestable under § 1514(a).

Even if CBP's erroneous designation of the Entries as deemed liquidated did fall within one of the categories of events that are protestable under § 1514(a), the time for protest as specified in § 1514(c)(3) has not commenced with regard to the Entries.  Pursuant to § 1514(c)(3)(A), decisions as to liquidation can only be protested within 180 days after, *but not before*, the date of liquidation or reliquidation; since the Entries have not liquidated, the time for protest has not commenced.  Protest under § 1514(c)(3)(B) starting from the date of the decision is not available for decisions as to liquidation because such decisions necessarily "involve" liquidation.  *See* 19 U.S.C. § 1514(c)(3); 19 U.S.C. § 174.12(e)(2); *Thyssenkrupp Steel North*

*America, Inc. v. United States*, 886 F.3d 1215, 1221-22 (Fed. Cir. 2018); *Boe*, 543 F.2d 151, 155-56.

Finally, even if protest could be said to someday become available to Fraserview when the Entries do eventually liquidate, that remedy would be manifestly inadequate. CBP has already stated that it considers its notice of deemed liquidation to be final and that it considers the protest window to have closed. As such, there is no possibility that the filing of a protest upon liquidation of the Entries would result in correction CBP's error or relief to Fraserview from the unlawful effects thereof; all that would occur would be denial of the protest as untimely.

Accordingly, Fraserview respectfully submits that protest is either unavailable or manifestly inadequate with respect to the Entries at issue, and that the Court therefore has jurisdiction pursuant to 28 U.S.C. § 1581(i).

### III.    <u>The Entries Are Not Liquidated.</u>

In order to correctly analyze whether protest was available with regard to the Entries, it is essential to recognize that the Entries remain unliquidated as a matter of law. CBP did not at any point affirmatively liquidate the Entries. Rather, it posted electronic notice that the Entries were "deemed liquidated." This notice is without effect: because the statutory criteria for liquidation as a matter of law have not occurred, deemed liquidation did not occur with regard to the Entries. Because the Entries are not affirmatively liquidated and are not deemed liquidated, by law they remain unliquidated.

#### A.  Liquidation by operation of law is governed by 19 U.S.C. § 1504(d).

19 U.S.C. § 1504(d) provides that an entry "shall be treated as having been liquidated" at the duty rate asserted at entry when – and only when – the following conditions are satisfied:

(1) Suspension of liquidation required by statute or court order has been lifted;

(2) CBP has received notice of the lifting of suspension; and

(3) CBP did not liquidate the entry within six months after receiving such notice.

*See* 19 U.S.C. § 1504(d); *see also Fujitsu General America, Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002). Where these three conditions are satisfied, liquidation occurs by operation of law without any action on the part of CBP. On the flip side of that same coin, however, liquidation by operation of law pursuant to § 1504(d) occurs *only* where the conditions provided for under the law exist, and no action on the part of CBP can cause it to occur in the absence of those conditions.

### B. This Court and the CAFC have held that where the statutory conditions for deemed liquidation are not present, the posting of notice by CBP of deemed liquidation does not result in liquidation of the entries in question.

The courts have acknowledged that CBP notices of deemed liquidation do not cause deemed liquidation to occur. In *LG Electronics*, this Court expressly ruled that (1) where suspension of liquidation by Commerce instructions[1] remains in place, liquidation by operation of law under 19 U.S.C. § 1504 cannot occur; (2) erroneous notices of deemed liquidation do not cause liquidation to occur; and (3) therefore, the entries remain unliquidated. *See LG Electronics,* 991 F. Supp. 668, 676-77. Similarly, in *United States v. American Home Assur. Co.*, 35 C.I.T. 585, 591 (2011), this Court stated that "deemed liquidation cannot occur while a

---

[1] *LG Electronics* has been incorrectly interpreted in *Cemex, SA v. United States*, 384 F.3d 1314 (Fed. Cir. 2004) and *Alden Leeds Inc. v. United States*, 476 Fed. Appx. 393 (Fed. Cir. 2012) (nonprecedential opinion) as addressing notices of liquidation contrary to court order. *See Cemex*, 384 F.3d 1314, 1324, fn 13; *Alden Leeds II,* 476 Fed. Appx. 393, 399 fn 3 (2012). However, only a small portion of the *LG Electronics* opinion, involving notices of liquidation other that the notices of deemed liquidation, addresses liquidation notices contrary to court order; the court's analysis with regard to notices of deemed liquidation solely addresses the circumstance in which Commerce-ordered suspension is in effect. *LG Electronics*, 991 F. Supp. 676-77.

suspension of liquidation is in place, and that Customs has no authority to effect a deemed liquidation."

In *Alden Leeds Inc. v. United States*, 721 F. Supp. 2d 1322 (Ct. Int'l Tr., 2010) ("*Alden Leeds I*"), *rev'd on other grounds*, *Alden Leeds Inc. v. United States*, 476 Fed. Appx. 393 (Fed. Cir. 2012) (nonprecedential opinion) ("*Alden Leeds II*") this Court similarly ruled that in a case in which CBP posted notice of deemed liquidation "while Commerce's suspension of liquidation was in effect and after having received clear notice of the suspension of liquidation for the subject merchandise…no argument can be advanced to support a claim that deemed liquidation did, in fact, occur." *See Alden Leeds I* at 1332. The Court cited to *Am. Permac, Inc. v. United States,* 642 F. Supp. 1187 (Ct. Int'l Tr. 1986) for the principle that "Congress intended the suspension of liquidation required during {antidumping administrative reviews} to override the 'deemed liquidation' provisions of § 1504." *Alden Leeds I* at 1332 (quoting *Am. Permac* at 1194-95). In a nonprecedential opinion on appeal, the Federal Circuit disagreed with the CIT as to the implications of the lack of deemed liquidation with regard to subject matter jurisdiction, but agreed that the entries at issue "were not actually deemed liquidated by operation of law, because the prerequisites for deemed liquidation had not occurred." *Alden Leeds II*, 476 Fed. Appx. 393, 400.

**C. Because the § 1504(d) conditions are not present with regard to the Entries, deemed liquidation has not occurred; accordingly, the Entries remain unliquidated.**

Liquidation is a binary state: either an entry is unliquidated, or it is liquidated. If CBP has not liquidated an entry pursuant to its authority to do so provided in 19 U.S.C. § 1500(d), and that entry has not otherwise been liquidated by operation of law pursuant to 19 U.S.C. § 1504(a) or (d), it is unliquidated.

The subject Entries were not liquidated by CBP pursuant to § 1500(d).  The Entries additionally were not liquidated by operation of law, because the conditions precedent for deemed liquidation in § 1504(d) – lifting of suspension of liquidation and notice to CBP of lifting of suspension of liquidation – do not exist.  As such, the Entries remain unliquidated.

**IV.**   **Description of the Contested Issue**

Understanding that the Entries are unliquidated allows for a more accurate assessment of the contested issue in this case.  Fraserview does not contest unlawful liquidation of the Entries, because no liquidation has occurred.  Rather, Fraserview contests CBP's erroneous designation of the Entries as "deemed liquidated" when, in fact and in law, they remain unliquidated, and further contests CBP's refusal to correct that erroneous designation.

"{W}hen considering whether to assert jurisdiction under § 1581(i), the Court of Appeals has instructed this Court to look to 'the true nature of the action' at the outset of a proceeding in order to determine which avenue of review is appropriate." *Chemsol,* 901 F. Supp.2d 1362, 1366 *(quoting Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)).  With this directive in mind, the distinctive nature of the issue at bar (referred to hereafter as the "contested issue") cannot be overemphasized.  This is not an issue of unlawful actual liquidation of entries that should have remained suspended.  This not an issue of deemed liquidation contrary to Commerce instructions to liquidate.  In those cases, liquidation, though contrary to law, has actually occurred, and the posted notice of such liquidation is accurate even if liquidation is unlawful.  This is an entirely different situation, in which CBP has labeled the Entries as deemed liquidated when they are actually still unliquidated, and has stated the intent to treat the Entries as finally deemed liquidated despite acknowledging that it had erred.

**V.**     **The Contested Issue is Not a Protestable "Decision" Under 19 U.S.C. § 1514(a).**

There are two types of protestable events in 19 U.S.C. § 1514(a): (A) clerical errors, mistakes of fact, and other inadvertence, and (B) "decisions" of CBP with regard to the 7 specifically enumerated issues in subsections (1) through (7).  *See* 19 U.S.C. § 1514(a); 19 C.F.R. § 174.11.  These two types of protestable events are distinct from one another and therefore must be considered separately; this Section addresses whether the contested issues are protestable "decisions," while Section VI addresses whether the contested issues are protestable clerical errors or mistakes of fact.

In order to be considered a protestable "decision," the contested issue must satisfy two criteria: (1) it must fall within one of the seven categories of protestable actions or events enumerated in 514(a), and (2) it must meet the definition of "decision" imposed by the courts and CBP for purposes of § 1514(a).

**A.  With very limited exceptions, the word "decisions" in § 1514(a) refers only to decisions upon liquidation of an entry.**

From the first, the courts and CBP have expressly defined "decisions" that are protestable pursuant to 19 U.S.C. § 1514(a) to be decisions become final and conclusive upon liquidation, and have ruled on that basis that pre-liquidation decisions affecting the rate and amount of duties are not protestable.   The only exception to this rule relates to those expressly enumerated protestable "decisions" for which finality is unrelated to liquidation status; e.g., exclusions and demands for redelivery (§ 1514(a)(4)), and post-entry claims for refunds pursuant to a free trade agreement (§ 1514(a)(7)), neither of which are relevant in this case.

In *Dart Export Corp. v. United States*, 43 C.C.P.A. 64 (Ct. Cust. & Pat. App. 1956), the U.S. Court for Customs & Patent Appeals considered a case in which an importer protested a preliminary decision, made by the Customs collector at the time of entry, as to the classification

and duties applicable to the merchandise in question.  The importer argued that § 1514 rendered all "decisions," including the collector's original assessment of duty at entry, final if not protested within 60 days (the protest time limit at the time).  The court stated that while a case decided prior to the Tariff Act of 1930 held that the importer could file a protest prior to liquidation, "This is no longer the law."  *Dart Export Corp.*, 43 C.C.P.A. at 72.  The court found that interpreting § 1514 to render all "decisions" final within 60 days unless protested would render other portions of the Tariff Act of 1930 meaningless.[2]  "This obviously is not in accordance with the rule of statutory construction that the entire context of a statute must be considered and every effort made to give full force and effect to all language contained therein." *Id.* at 74.  Accordingly, the court held that the collector's pre-liquidation assessment of duties was not a "decision" under Section 514 and was therefore not protestable.  *Id.*

This interpretation of the word "decisions" in § 1514 as referencing only final decisions at liquidation is reflected in cases throughout the first four decades of the Tariff Act of 1930. *See, e.g., United States v. B. Holman Inc.*, 29 C.C.P.A. 3, 13-14 (Ct. Cust. & Pat. App. 1941) ("Under {the provisions of Section 505} and the provisions of section 514…all decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, so far as the issues here are concerned, against which a protest will lie."); *Commonwealth Oil Refining Co., Inc. v. United States*, 332 F. Supp. 203, 204 (Cust. Ct. 1971) (holding both actual liquidation and notice thereof are mandatory conditions precedent to protest under § 1514); *Boe*, 543 F.2d 151 (holding that CBP's denial of

---

[2] For example, Section 505 of the Tariff Act of 1930 (the predecessor provision to today's Section 500) directed the collector to "ascertain, fix, and liquidate the rate and amount of duties to be paid" after receiving the appraiser's report; if however duties are considered final 60 days after the collector's preliminary assessment upon arrival, Section 504 would have been rendered meaningless.

an importer's request to liquidate entries is not a protestable decision because "no liquidation has occurred").

The courts have continued to find that decisions of CBP prior to liquidation are not protestable "decisions" for purposes of § 1514(a) even after the addition of Section 520,[3] providing for deemed liquidation, to the Tariff Act of 1930.  In *Chemsol*, for example, this Court considered an importer's § 1581(i) suit contesting the legality of CBP's extensions of liquidation of its entries.  *See Chemsol*, 901 F. Supp. 2d 1362, 1366. The Court's ruling that "the Plaintiffs' challenge to Customs' extensions of the time for liquidation may be brought, *after liquidation*, by filing a protest," confirms that decisions "as to" liquidation do not become protestable until the entry liquidates.  *Id*.; *see also Boe*, 543 F.2d 151 (finding an importer's protests of CBP's denial of its request for liquidation of its entries were premature because "no liquidation has occurred."); *McDonnel Douglas Corp. v. United States*, 75 Cust. Ct. 6, 22 (Cust. Ct. 1975) (ruling that where protest of drawback denial occurred prior to liquidation of the drawback entry, such protest was premature).

In *Borusan Mannesmann Boru Sanayi Ve Ticaret AS v. United States*, 578 F. Supp. 3d 1333 (Ct. Int'l Tr. 2022), this Court considered whether it had jurisdiction over CBP's denial of a protest of CBP's decision to deny a request for administrative refunds made via Post Summary Correction.  The plaintiffs argued that this constituted a protestable "decision" as to charges and exactions.  However, none of the entries at issue were liquidated at the time of protest.  The Court held in relevant part:

> {A}s the subject merchandise remains unliquidated the administrative process is incomplete. Customs has not made a "final and conclusive" decision as to a charge

---

[3] Deemed liquidation in the absence of suspension was added to the statute in 1978.  *See* Public Law 95-410, 92 Stat. 888, § 209 (October 3, 1978) (establishing new provision 19 U.S.C. § 1504).  Liquidation by operation of law following the lifting of suspension of liquidation and notice thereof was first added in 1993.  *See* Public Law 103-182, 197 Stat. 2204 § 641 (December 8, 1993).

or exaction or any other decision within the seven categories under § 1514(a). Accordingly, Customs has not made a protestable decision that has triggered the Court's jurisdiction, and the court dismisses the case for lack of subject matter jurisdiction.

*Borusan*, 578 F. Supp. 3d at 1344. In other words, the Court ruled as recently as last year that in order for a "decision" to be protestable under 1581(a), the decision must be "final and conclusive," and that such finality with regard to duty rates only attaches at liquidation. *Id*.

CBP has likewise ruled in its protest decisions that pre-liquidation "decisions" are not final and conclusive and therefore not subject to protest. *See, e.g.,* HQ 115811 (April 22, 2003) (holding that "The assessment of duties by CBP at the time of entry is not a 'decision' within the meaning of 19 U.S.C. § 1514(a)… It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of CBP officers," and that since the entries in question had not yet been liquidated, the protest was premature.); HQ 228891 (January 8, 1997) (holding that the protest was premature because the entry was not liquidated at the time of filing); HQ 223547 (March 11, 1992) ("Because a TIB entry does not involve an appraisement or a liquidation…such an entry is not protestable under 19 U.S.C. § 1514(a)(1) or 1514(a)(5).").

**B. This Court has expressly ruled in *LG Electronics* that erroneous notices of deemed liquidation, if issued while a Commerce order of suspension is in effect, are not protestable under 19 U.S.C. § 1514(a) and that jurisdiction is therefore available under 28 U.S.C. § 1581(i).**

In *LG Electronics*, this Court ruled that where suspension of liquidation remains in place, liquidation by operation of law under § 1504 cannot occur; that erroneous notices of deemed liquidation do not cause liquidation to occur; and that, because no liquidation has occurred, the notice of deemed liquidation is not subject to protest. *See LG Electronics*, 991 F. Supp. 668, 676-77. Under *LG Electronics*, therefore, the Entries are not protestable.

In *LG Electronics*, the plaintiff asserted that the Court had jurisdiction 28 U.S.C. § 1581(i) to hear its action contesting "alleged liquidations," because all such alleged liquidations either had not occurred or were invalid and therefore no protests could be filed, so jurisdiction via § 1581(a) was unavailable. *Id*. at 762. The government argued that liquidation had occurred and could have been protested, and that therefore the court lacked jurisdiction under § 1581(i) because LG Electronics could have filed protests and obtained jurisdiction under § 1581(a). *Id.*

The Court divided the "alleged liquidations" into three categories for purposes of analysis: (1) "no change" liquidations, (2) "automatic" liquidations, and (3) "deemed liquidations" under 19 U.S.C. § 1504(a). *Id*. at 673. Only the portion of the Court's opinion discussing deemed liquidations is relevant here.

Customs posted notices of "deemed liquidation" for two entries. For the first entry, notice of deemed liquidation was posted by Customs while the entry in question was subject to suspension of liquidation as a result of Commerce suspension of liquidation instructions only. For the second entry, notice of deemed liquidation was posted by Customs at a time when the entry in question was subject to both Commerce suspension instructions and a court injunction issued upon appeal of the antidumping duty order. *Id*. at 675, fn 10; 676, fn 16.

Under § 1504(a) in effect at that time, liquidation of entries was deemed to have occurred by operation of law one year after entry unless subject to an exception provided for in § 1504(b)(2) in cases of "extension, suspension, or court order." *Id.* at 676. The Court in *LG Electronics* ruled that because the two entries were suspended pursuant to Commerce instructions, "as a matter of law, no deemed liquidation…occurred." *Id*. The court expressly ruled that LG Electronics was not required to protest the erroneous notices of deemed liquidation in order for the court to have jurisdiction:

Although LG received erroneous notice of liquidation of these entries, plaintiff's claim may be heard, because LG did not have to protest within 90 days, as specified by 19 U.S.C. § 1514, to preserve its right to judicial review. …

Notwithstanding Customs' provision for posting notice of deemed liquidation, informing importers that a deemed liquidation has occurred, 19 C.F.R. § 159.9(c)(2), as indicated, deemed liquidation itself occurs by operation of law. 19 U.S.C. § 1504(a). Where a liquidation has occurred by operation of law, notice starts the clock for the protest period, 19 C.F.R. § 159.9(c)(2)(iii), but the regulations specify that the notice be "dated as of the date of expiration of the statutory period," 19 C.F.R. § 159.9(c)(2)(ii). Such notice may be posted any time "within a reasonable period after each liquidation by operation of law." 19 C.F.R. § 159.9(c)(2)(ii). Accordingly, erroneous notice cannot create a deemed liquidation. Without the expiration of the statutory period, there is no date to be noticed. As the statutory period for protest never began to run, plaintiff may bring suit under 28 U.S.C. § 1581(i) to compel liquidation in accordance with the prior order of the court.

*LG Electronics* at 676-677 (internal citations omitted).

This legal reasoning, while addressing erroneous notices of deemed liquidation under § 1504(a) in particular, is equally applicable to erroneous notices of deemed liquidation under § 1504(d).  In each case, liquidation occurs by operation of law only upon the coming into existence of the conditions for deemed liquidation specified in the statute.  In each case, one of the statutory conditions for deemed liquidation is the absence of any statutory or court-ordered suspension of liquidation.  The court in *LG Electronics* held that where Commerce has suspended liquidation of an entry, Customs notice of deemed liquidation pursuant to §1504(a) is without effect and need not be protested; so too, where Commerce has suspended liquidation and not yet lifted that suspension, Customs notice of deemed liquidation pursuant to § 1504(d) is without effect and need not be protested.

The Federal Circuit has on several occasions mis-read *LG Electronics* as applying only to court-ordered suspensions and has consequently dismissed its relevance to suspension pursuant to Commerce instructions when in fact it is directly relevant.  *See Cemex*, 384 F.3d 1314, 1324,

fn 13 (stating in a footnote that *LG Electronics* was "distinguishable" because it "involved liquidations in violation of an injunctive order."); *Alden Leeds II*, 476 Fed. Appx. 393, 399 fn 3 (rejecting this Court's reliance on *LG Electronics* in the case being appealed because "In *LG Electronics*…the Court of International Trade had entered preliminary injunctions against liquidation of the disputed entries.").  However, this reading of *LG Electronics* is factually inaccurate.  The Court's opinion in *LG Electronics* expressly notes that of the 50 notices of liquidation at issue in *LG Electronics*, 46 were issued <u>prior</u> to the Court's preliminary injunction, when the only suspension of liquidation was pursuant to Commerce instructions.  *See LG Electronics* at 675, fn 11 (stating that all but three of the "automatic liquidation" notices and one "deemed liquidation" notice "preceded the relevant injunction dates.").  The Court's analysis of the validity of the deemed liquidation notices, one of which occurred prior to the court injunctions, expressly considers their validity given the existence of the Commerce suspension instructions *only*.  *Id*.  With regard to the entry for which notice of deemed liquidation occurred after the court injunction, the Court noted in a footnote that its validity would "also" be subject to the court's separate analysis of notices of liquidation in violation of court order, confirming that the analysis quoted above does *not* relate to suspension by court order.  *Id*. at 676, fn 16.  As such, *LG Electronics* is directly on point.

## VI.   <u>Mistakes of Law are Not Protestable; Clerical Errors, Mistakes of Fact and Other Inadvertence Cannot Be Protested Prior to Liquidation</u>

In addition to protest of "decisions" in the seven enumerated categories, § 1514(a) also authorizes protest of "any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation."  *See* 19 U.S.C. § 1514(a).  The contested issues in this case are mistakes of *law*, which are expressly distinguished from this category of protestable events, and

therefore are not protestable under this language.  Moreover, the language of the statute

expressly states that clerical errors, mistakes of fact and other inadvertence are protestable only

"in any entry, liquidation, or reliquidation;" i.e., once the entries have liquidated.  Therefore,

even if the contested issues could be said to have arisen out of a clerical error, mistake of fact or

other inadvertence, they are not protestable because the Entries remain unliquidated.

A.  **Protestable clerical errors, mistakes of fact, and other inadvertence must be defined consistently with now-repealed Section 520(c).**

The inclusion of "clerical errors, mistakes of fact and other inadvertence" in the language

of § 1514(a) is a relatively recent addition to the statute.  Prior to 2004, 19 U.S.C. § 1520(c)(1)

provided for an exception to the (then 90-day) protest rule, allowing CBP to correct "any clerical

error, mistake of fact, or other inadvertence…not amounting to an error in the construction of a

law, adverse to the importer…in any entry, liquidation, or other customs transaction" if brought

to CBP's attention within one year after the date of liquidation.  *See* 19 U.S.C. § 1520(c)(1)

(2003).  In 2004, Congress repealed § 1520(c) and amended § 1514 "to clarify that protest within

180 days is necessary to address clerical errors, mistakes and other inadvertencies."[4]

Accordingly, this category of protestable events expressly covers the same type of clerical errors,

mistakes of fact, and other inadvertence that was previously covered by the repealed §

1520(c)(1), and must be interpreted consistently with that provision.

This Court has ruled that a clerical error for purposes of § 1520(c) is "a mistake made by

a clerk or other subordinate, upon whom devolves no duty to exercise judgement, in writing or

copying the figures or in exercising his intention." *See PPG Industries, Inc., v. United States*, 7

C.I.T. 118, 124 (1984). Mistakes of fact "occur in instances where either (1) the facts exist, but

---

[4] CBP, "Technical Corrections: Matters Subject to Protest and Various Protest Time Limits," 76 Fed. Reg. 2573 (January 14, 2011) ("Technical Corrections"); *see* Miscellaneous Trade and Technical Corrections Act of 2004, P.L. 108-429, 118 Stat. 2434 (December 3, 2004).

are unknown, or (2) the facts do not exist as they are believed to." *Executone Information Systems v. United States*, 96 F. 3d 1383, 1386 (Fed. Cir. 1996) ("it is undisputed that 19 U.S.C. § 1520(c)(1) does not apply to errors in the construction of the law"), citing *Hambro Automotive Corporation v. United States*, 603 F. 2d 850, 855 (CCPA 1979); *see also, Degussa Canada Ltd. v. United States*, 87 F. 3d 1301 (Fed. Cir. 1996). "Inadvertence" for purposes of 1520(c) has been defined "an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake." *Aviall of Texas, Inc. v. United States*, 70 F. 3d 1248, 1249 (Fed. Cir. 1995), citing *Hambro*, 603 F.2d at 854.

Mistakes of law, which the Federal Circuit has stated "occur where the facts are known, but their legal consequences are not known or are believed to be different than they really are," are expressly distinguished from mistakes of fact and not included in the list of items covered by § 1520(c). *Executone*, 96 F. 3d 1at 1386 ("it is undisputed that 19 U.S.C. § 1520(c)(1) does not apply to errors in the construction of the law").

**B. The contested issue, at its heart, is a mistake of law, and therefore is not protestable.**

The declaration submitted by Defendant in support of its Motion to Dismiss states that CBP "designated these entries as deemed liquidated and posted this designation in the ACE system and on CBP's Official Notice of Extension, Suspension and Liquidation website" as a result a "decision by CBP" that the entries "had become liquidated by operation of law under 19 U.S.C. § 1504(d)." *See* Declaration of Kathy Brenske, Doc. No. 10-4.  A "decision" that entries have "become liquidated by operation of law under 19 U.S.C. § 1504(d)" is necessarily a legal decision, because it requires CBP to review the statutory language of § 1504(d) and determine whether the legal criteria for liquidation by operation of law are satisfied.  For CBP to decide

incorrectly that deemed liquidation had occurred is therefore a mistake of law, not a mistake of fact.

CBP's subsequent position that its erroneous "decision" that deemed liquidation had occurred was final and irreversible is likewise fundamentally a legal error, not an error of fact. CBP appears to have conflated the legal effect of posting notice of actual liquidation – which is the action that causes the liquidation to occur – with the legal effect of posting notice of deemed liquidation, which is merely notice of an event that occurred without CBP's involvement.  With regard to formal liquidation pursuant to 19 U.S.C. § 1500, 19 C.F.R. § 159.9(c)(1) provides that the electronic posting of notice of liquidation sets the date of liquidation and "will be deemed the legal evidence of liquidation."  The posting of notice of liquidation pursuant to 19 C.F.R. § 159.9(c)(1) accordingly both *causes* liquidation to occur and sets the date on which it does occur. As such, notice pursuant to § 159.9(c)(1) constitutes a final and conclusive decision.  By contrast, 19 C.F.R. § 159.9(c)(2)(i), which is expressly identifies as an exception to subparagraph (c)(1), that liquidations by operation of law pursuant 19 U.S.C. § 1504 "will be deemed liquidated as of the date of expiration of the appropriate statutory period, *and* will be posted on www.cbp.gov when CBP determines that each entry has liquidated by operation of law." (emphasis added).  With respect to deemed liquidation, notice is just notice – it does not cause deemed liquidation and has no impact on the existence or date of liquidation, which occur by operation of law.  The finality of decisions relating to the entry arise out of the deemed liquidation itself, not the notice.  To the extent that CBP believed that having posted notice of deemed liquidation of the Entries was final and conclusive in the same manner as posting notice of actual liquidation, this is a mistake of law.

17

Accordingly, the contested issue is not a clerical error, mistake of fact, or other inadvertence, and as such is not protestable under that language of § 1514(a).

### C. Clerical errors, mistakes of fact and other inadvertence are not protestable prior to liquidation because they are not final or conclusive.

It is not known to Fraserview how or why CBP arrived at its erroneous belief that the Entries were deemed liquidated by operation of law pursuant to § 1520(d). The Brenske Declaration does not provide any detail as to the basis of CBP's "decision" in this regard; indeed it would appear that the declarant was not involved in that decisionmaking process. *See* Brenske Declaration. As such, it is impossible to know whether CBP's error was due solely to a misunderstanding of the law, or whether its erroneous legal conclusion was predicated on an underlying clerical error, mistake of fact or other inadvertence.

Even if the errors in CBP's legal analysis could be attributed to an underlying clerical error, mistake of fact or other inadvertence, however, such clerical error, mistake of fact or other inadvertence is not protestable prior to liquidation. The statutory language limits protests in this category to clerical errors, mistakes of fact or other inadvertence "in any entry, liquidation, or reliquidation," clearly indicating that only errors that persist at liquidation are protestable. *See* 19 U.S.C. § 1514(a). Moreover, case law and CBP rulings interpreting the statutory language "clerical errors, mistakes of fact and other inadvertence" in its previous incarnation as part of § 1520(c) further confirms that the language is intended to reference only final errors, mistakes and inadvertence at liquidation. *See, e.g.*, *J.S. Sareussen Marine Supplies, Inc. v. United States*, 304 F. Supp. 1185 (1969); HQ 228020 (April 21, 2000).

Accordingly, to the extent that the contested issue may have arisen from a clerical error, mistake of fact or other inadvertence, such clerical error, mistake of fact or other inadvertence is not protestable because the Entries remain unliquidated.

**VII.** **Even If The Entries Were Protestable Under 514(a), the Time For Filing of a Protest Has Not Yet Commenced Under Section 514(c)(3).**

In order to be protestable, a clerical error, mistake of fact, other inadvertence or "decision" of CBP must not only be properly included in § 1514(a), but must also be ripe for protest under § 1514(c)(3). If the statutory window for protest prescribed in § 1514(c)(3) has not yet opened, then protest is premature and cannot be heard by CBP.

Defendant claims that "A party wishing to contest a decision by CBP must file a protest within 180 days of 'the date of the decision as to which protest is made.'" Motion to Dismiss at 13 (citing 19 U.S.C. § 1514(c)(3)). In so doing, Defendant significantly mischaracterizes 19 U.S.C. § 1514(c)(3), the complete text of which provides:

> A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—
> (A) date of liquidation or reliquidation, or
> (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.
> A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 180 days from the date of mailing of notice of demand for payment against its bond. If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in this subsection.

*See* 19 U.S.C. § 1514(c)(3). Defendant's description of the protest timing requirements jumps straight to the second half of subparagraph (B), and thereby omits any mention of subparagraph (A), which requires that protest may not be filed prior to the date of liquidation or reliquidation, as well as the first half of subparagraph (B), which specifies that the protest timing asserted by Defendant is only available if subparagraph (A) is inapplicable. When § 1514(c)(3) is properly considered in its entirety, it is clear that protest of the Entries is not available under 19 U.S.C. § 1514(c)(3) because subparagraph (A) *is* applicable, and liquidation has not yet occurred.

**A. Protest is not available under 514(c)(3)(A) because the Entries are not yet liquidated.**

Subsection 1514(c)(3)(A) provides that a protest of a decision, order or finding described in subsection (a) of the statute shall be filed within 180 days after *but not before* the date of liquidation or reliquidation. *See* 19 U.S.C. § 1514(c)(3)(A). This language is unambiguous: a protest may not be filed under this section until the entry has liquidated. Therefore, even if a protestable event had occurred under § 1514(a), it not yet eligible for protest under § 1514(c)(3)(A) because the Entries are not liquidated.[5]

**B. Protest is also not available under 514(c)(3)(B) because subparagraph (A) is not "inapplicable."**

Subparagraph 1514(c)(3)(B) provides that "in circumstances where subparagraph (A) is inapplicable," protest may be filed within 180 days after but not before "the date of the decision as to which protest is made." Defendant claims that CBP's designation of the Entries as deemed liquidation is the "decision as to which protest is made," and that therefore protest should have been filed in accordance with this provision within 180 days after the date on which the erroneous notice of deemed liquidation was posted. *See* Motion to Dismiss at 13. However, Defendant fails entirely to reconcile this claim with the statutory provision that the protest

---

[5] CBP's implementing regulations appear on their face to expand the language of § 1514(c)(3)(A) by allowing protest within 180 days after "the date of notice of liquidation or reliquidation, or the date of liquidation or reliquidation, as determined under §§ 159.9 or 159.10 of this chapter." *See* 19 C.F.R. § 174.12(e)(1). However, 19 C.F.R § 159.9 confirms that "notice of liquidation or reliquidation" is only authorized as the start date for the protest period for entries liquidated by operation of law prior to December 18, 2004. For entries liquidated by operation of law on or after December 18, 2004, § 159.9 provides that protest must be filed "within 180 days from the date of liquidation of an entry by operation of law." *See* 19 C.F.R. § 174.12(c)(2)(iii). This provision conforms to the change in the language of 19 U.S.C. § 1514(c)(3)(A) in December 2004 from "date of notice of liquidation or reliquidation" to "date of liquidation or reliquidation" as the start date for the protest time period. *See* Technical Corrections, 76 Fed. Reg. 2573, 2574. Accordingly, for the Entries at hand, 19 C.F.R. § 174.11 does not authorize protest after the date of "notice of liquidation," because that option is expressly available only for entries prior to December 18, 2004.

window can only begin with the date of the "decision" if subparagraph (A) – requiring protest from the date of liquidation – is "inapplicable."

The regulations implementing § 1514(c)(3)(B) interpret the statutory language "in circumstances where subparagraph (A) is inapplicable" to mean situations in which the protested decision "involve{es} neither a liquidation nor reliquidation." *See* 19 C.F.R. § 174.12(e)(2). The regulation lists specific examples of decisions that do not "involve" liquidation or reliquidation: exactions, exclusions of merchandise from entry or delivery, notices demanding redelivery to CBP, denials of § 1520(d) requests for post-entry refunds, and (for entries prior to the repeal of § 1520(c)) denials of § 1520(c) petitions. *Id.*

Each of the "examples" provided in 19 C.F.R. § 174.12(e)(2) represents one of the enumerated categories of protestable events in 19 U.S.C. § 1514(a) (including a category repealed in 2004).[6]  Given that these "examples" were taken straight from the statute, the omission of other enumerated categories of protestable decisions, including decisions as to "liquidation or reliquidation" provided for in 1514(a)(5), from this list of examples evinces a clear position by CBP that the omitted statutory categories are *not* examples of decisions that do not "involve" liquidation or reliquidation.

The distinction made by CBP between those statutory categories of protestable decisions that are protestable from the "date of decision" and those that are only protestable from the "date of liquidation" is consistent with the courts' understanding that most of the § 1514(a) categories only constitute protestable "decisions" at liquidation: the examples provided in § 174.12(e)(2)

---

[6] "The date of an exaction" relates to § 1514(a)(3); "the date of written notice excluding merchandise from entry, delivery or demanding redelivery to CBP custody under any provision of the customs laws" relates to § 1514(a)(4); "the date of written notice of a denial of a claim filed under section 520(d)" refers to § 1514(a)(7); and "within 90 days of the date of denial of a petition filed pursuant to section 520(c)(1) … relating to an entry made before December 18, 2004" refers to the a previous version of § 1514(a)(7) which provided for protests of both sections (c) and (d) of § 1520.

are coextensive with the limited subset of § 1514(a) "decisions" for which liquidation is not the determinant of finality. For example, in the case of exclusion of merchandise from entry, 19 U.S.C. § 1499(c)(5) states that a failure by CBP to make a determination as to admissibility of detained merchandise within 30 days constitutes a "decision...to exclude the merchandise for purposes of § 1514(a)(4)," rendering the decision to exclude final without requiring liquidation or even an entry. Similarly, refund requests pursuant to 19 U.S.C. § 1520(d) are processed in accordance with each identified FTA's implementing regulations, which regulations expressly provide that liquidation does not make the assessed duties final and conclusive so long as the § 1520(d) request is timely submitted. *See, e.g.* 19 C.F.R. § 10.871(c)(2); *see also* 19 U.S.C. § 1520(d). All of the other protestable "decisions" enumerated in subsection (a) and not identified as "examples" in 19 C.F.R. § 174.12(e)(2) become final and conclusive upon liquidation of the entry, and therefore the date of liquidation or reliquidation of the entry is directly applicable to the protestability of the entry. Accordingly, § 1514(c)(3), as interpreted by 19 C.F.R. § 174.12(e)(2), must be read to require that protest of "decisions" pursuant to 19 U.S.C. §§ 1514(a)(1), (2), (5) and (6) can only be filed within 180 days *but not before* the date of liquidation.

This interpretation of the word "decision" in § 1514(c)(3)(B) in accordance with the courts' interpretation of the word "decision" in § 1514(a) is in accordance with the basic principle of statutory construction that identical terms within the same statute should ordinarily be given the same meaning. *See Brown v. Gardner,* 513 U.S. 115, 118 (1995) ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute."); *PrimeSource Building Products, Inc. v. United States*, 497 F. Supp. 3d 1333, 1352 (Ct. Int'l Tr. 2021) ("We disfavor an interpretation that ascribes different meanings to the same term as used

in different provisions of the same statute.").  While this presumption that identical terms be given identical meaning may be overcome where the terms are used in different contexts or for different functions, or given evidence of Congressional intent to construe the terms differently, that is not the case with regard to § 1514.  Subsection 1514(a) uses the word "decision" to describe what types of Customs actions are subject to protest; subsection 1514(c)(3) expressly prescribes when protests of § 1514(a) "decisions" may and must be filed.  As such, the term "decision" in § 1514(c)(3)(B), which together with § 1514(c)(3)(A) must necessarily be bear the same meaning as the term "decision" in § 1514(a).

Clerical errors, mistakes of fact and other inadvertence likewise are considered to be protestable only once the entry is liquidated, making it clear that the date of liquidation (or reliquidation) is very much applicable.  *See, e.g., American Export Lines, Inc. v. United States*, 496 F. Supp. 1320, 1324 (Cust. Ct. 1980) ("The provision for repair duty remission petitions under section 4.14 of the Customs regulations does not create the circumstances in which liquidation is inapplicable" for purposes of protest timing because the provisions expressly allow for liquidation to terminate the proceedings).

This Court has held that "{w}here a statute creates an exception to a general rule…such exception is to be read narrowly and not interpreted to apply where Congress did not expressly provide for it."  *PrimeSource*, 497 F. Supp. 3d at 1352.  In this case, the general rule in § 1514(c)(3)(A) is that protests may not be filed prior to the date of liquidation or reliquidation; the exception to this rule in § 1514(c)(3)(B) is to be used only where the general rule is "inapplicable."  To expand this exception to allow protest after the date of any "decision" regardless of liquidation status, and particularly after the date of decisions for which liquidation

has historically been recognized to start the protest window, would be to allow the exception to swallow the rule.

### C. Cases finding protest premature because the entry was not yet liquidated and therefore not ripe for protest under 514(c)(3)(A).

In *Boe*, the Court of Customs and Patent Appeals considered a case in which an importer requested, prior to liquidation of its entries, that the entries be liquidated at a different classification and duty rate in accordance with a recent court case.  *Boe*, 543 F.2d at 152. Customs denied this request and did not liquidate the entries.  The importer then filed protests on the theory that Customs' denial of its request to liquidate constituted a protestable "decision." The CCPA disagreed, and ruled that "It is undisputed that no liquidation has occurred herein. Protests purportedly filed under the authority of § 1514(b)(2)(A) would therefore be premature and non-justiciable in the Customs Court."  *Id*. at 155-56.  The referenced provision is the predecessor version of current-day § 1514(c)(3)(A).  The CCPA further rejected the importer's argument that protest was available pre-liquidation under § 514(b)(2)(B) (the predecessor version of current-day § 1514(c)(3)(B)), responding that "the subject civil action directly involves the liquidation procedure. Such actions are governed by § 1514(b)(2)(A). Liquidation not having occurred, importer's protests were premature."  *Id*. at 156.

*Boe* addressed a "decision" of CBP that directly relates to liquidation – specifically, its decision not to liquidate in accordance with the importer's request – and expressly ruled held that only protest on or after the date of liquidation and *not* the date of the "decision" was permitted. This situation is directly analogous to the case at hand: if CBP's erroneous designation of the Entries is a "decision," it is a decision "as to…liquidation" in the same manner as the decision in *Boe*.  As in *Boe*, therefore, even if a protestable decision has occurred with regard to the entries, it cannot be protested under § 1516(c)(3) until the entries liquidate.

Similarly, in *Thyssenkrupp Steel*, the Federal Circuit noted that the protests under review addressed decisions as to liquidation pursuant to § 1514(a)(5), and ruled that "A protest regarding a liquidation under § 1514(a) must be filed within 180 days of the date of liquidation." *Thyssenkrupp Steel,* 886 F.3d at 1221-22.

Other cases demonstrate the courts' application of this rule to other categories if § 1514(a) decisions. *See McDonnel Douglas Corp.*, 75 Cust. Ct. 6, 22 (ruling that where protest of drawback denial occurred prior to liquidation of the drawback entry, such protest was premature; *United States v. Reliable Chemical Co.*, 605 F.2d 1179, 1183 (CCPA 1979) (ruling that , a protest after receiving a courtesy notice of liquidation, but prior to the actual liquidation, was premature: "since section 514(b)(2)(A) expressly proscribes filing a protest before the date of liquidation, we are constrained to conclude that the Customs Court erred in its determination that it had subject matter jurisdiction" under 28 U.S.C. § 1581(a).); *Tak Yuen Corp. v. United States* 29 C.I.T. 543, 547, 549 (2005) (finding that while protest was available under § 1514(a)(4) for exclusions, the issue was not (as plaintiff claimed) an exclusion but rather classification; as such, "this action contesting classification of plaintiff's merchandise was commenced prematurely, given the Tariff Act's unambiguous directive that a protest regarding a classification decision by Customs be filed within 90 days after but not before notice of liquidation.").

## VIII.   Cases Cited By Defendant Are Irrelevant, Distinguishable, or Unpersuasive

### A.   The cases cited by Defendant regarding protest of "premature" or unlawful liquidation pursuant to 19 U.S.C. § 1500 to are not relevant to the contested issue.

Cases cited by Defendant that hold that liquidation of entries by CBP in violation of Commerce instructions to suspend liquidation are nevertheless protestable are not relevant to the issue at hand. In *Juice Farms, Inc. v. United States,* 68 F.3d 1344 (Fed. Cir. 1995), the Federal

Circuit established the rule that where CBP erroneously liquidates entries that should have remained suspended pursuant to Commerce instructions, those "admittedly premature liquidations" are subject to protest because "all liquidations, whether legal or not, are subject to the timely protest requirement." *Juice Farms*, 68 F.3d at 1345-46 (as quoted in Motion to Dismiss at 16).  However*,* CBP liquidated the entries at issue in *Juice Farms* pursuant to its authority under 19 U.S.C. § 1500 and the procedures established in 19 C.F.R. § 159.9, which at that time provided that for all liquidations *except* liquidation by operation of law, the stamped bulletin notice of liquidation constitutes "legal evidence" of liquidation.  *See* 19 C.F.R. § 159.9. *Juice Farms* establishes the rule that a § 1500 liquidation, even if made contrary to law, is still a liquidation, and therefore protestable.  *Juice Farms*, 68 F.3d at 1345-46.  In this case, however, there is no liquidation, whether lawful or not, only an erroneous notice of § 1504 deemed liquidation that, by statute and regulation, cannot and did not cause liquidation to exist.  *Juice Farms* has nothing to say on this issue and is therefore irrelevant.

*Xerox Corp. v. United States*, 289 F.3d 792 (Fed. Cir. 2002) is likewise irrelevant to the question of whether notice of deemed liquidation is protestable in the absence of liquidation.  In that case, the issue was whether CBP's application of antidumping duties *at liquidation* to merchandise that was facially outside the scope of the antidumping duty order required a scope ruling or could be protested; the Federal Circuit ruled that such a "ministerial, factual error" was properly subject to protest.  *See Xerox*, 289 F.3d at 795. However, whether CBP's misapplication of Commerce instructions when liquidating entries subject to antidumping duties are protestable is not at issue here.

Other cases cited by Defendant in which the entries at issue were actually liquidated pursuant to § 1500, and which therefore are not on point in the instant case, include: *ARP*

*Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022) (addressing failure to timely protest ordinary scheduled liquidations pursuant to § 1500(d), despite instructions by CBP to do so in order to preserve option of refunds); *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1311 (Fed. Cir. 2004)[7] (involving liquidated entries); *United States v. Cherry Hill Textiles, Inc.,* 112 F.3d 1550, 1557 (Fed. Cir. 1997)[8] (addressing a case in which entries were liquidated pursuant to § 1500, the importer did not protest, and the government filed an enforcement action); *Degussa Canada*, 87 F.3d 1301, 1304 (addressing entries that were actually liquidated pursuant to § 1500); *TR Int'l Trading Co. v. United States,* 433 F.Supp.3d 1329, 1341 (Ct. Int'l Trade 2020) (involving affirmatively liquidated entries).

**B.  The cases cited by Defendant in which the conditions in § 1504 were present and liquidation by operation of law actually occurred are likewise inapposite.**

In support of its assertion that Fraserview had the ability to protest CBP's erroneous designation of the Entries as deemed liquidated, Defendant also cited several cases that held that deemed liquidation – i.e., liquidation that occurs by operation of law due to the existence of the criteria for deemed liquidation in §§ 1504(a) or (d) – is protestable.  *See, e.g., Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016); *Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231 (Fed. Cir. 2007); *Norsk*, 472 F.3d 1347, 1352.  All of these cases

---

[7] Defendant quotes the Federal Circuit in *Shinyei* as saying that "Section 1514(a) . . . is fairly construed to prohibit a challenge to 'decisions' of the Customs Service 'as to' liquidation outside the protest provisions of section 1514(a)." Motion To Dismiss at 15.  However, this quote is incomplete.  What the Federal Circuit actually said is that while § 1514 is fairly construed to prohibit a challenge to 'decisions' of the Customs Service 'as to' liquidation outside the protest provisions of section 1514(a), it "is not, however, fairly construed to prohibit reliquidation in all cases, particularly when an alleged error is with Commerce instructions."  *See Shinyei*, 355 F.3d at 1311.  *Shinyei* is a case in which the plaintiff is seeking correction of Commerce liquidation instructions, and the court must determine whether, once such correction is made, Customs may reliquidate the *finally liquidated* entries in question in conformity with the corrected instruction.  As such, the court's opinion never addressed what exactly constitutes a "decision…as to" liquidation for protest purposes because that was not the point of the case, and therefore the quoted language in the opinion adds nothing to this discussion.
[8] Far from supporting Defendant's arguments, *Cherry Hill Textiles* states that "*liquidation* of an entry is 'final and conclusive' as to all parties unless an administrative protest is filed challenging the liquidation."  *Cherry Hill Textiles*, 112 F.3s at 1557.  This holding is irrelevant in the instant case, in which liquidation has not occurred.

address situations in which the conditions for deemed liquidation set forth in § 1504(a) or (d) occurred, and therefore *liquidation by operation of law actually occurred*.  Where § 1504 deemed liquidation has actually occurred, the courts have held that such deemed liquidation triggers an ability to protest (and therefore an obligation to protest in order to establish the Court's jurisdiction) just as liquidation pursuant to § 1500 does.  However, again, these cases address the situation where liquidation by operation of law has actually occurred.  As with the cases addressing § 1500 liquidations, the cases addressing the implications of genuine § 1504 liquidations are irrelevant to the protestability of CBP's erroneous designation of the Entries as deemed liquidated, where deemed liquidation has not actually occurred and the Entries remain unliquidated.

With regard to *Koyo*, Defendant stated that "the Federal Circuit {in *Koyo*} made clear that there is no distinction between an unlawful actual liquidation and a *premature* deemed liquidation pursuant to 19 U.S.C. § 1514."  Motion to Dismiss at 14 (emphasis added).  Defendant's reference to "premature" deemed liquidation could give the impression that the Federal Circuit ruled in *Koyo* that protest is available when CBP announces deemed liquidation before it actually happens (i.e., "premature" deemed liquidation).  However, at no point does *Koyo* address the situation of a "premature" deemed liquidation; in fact the word "premature" appears nowhere in the opinion.  In *Koyo*, CBP failed to liquidate entries within six months after receiving notice of lifting of suspension of liquidation, thus satisfying all of the conditions for § 1504(d) liquidation by operation of law, then denied the protests Koyo timely filed within 90 days of the deemed liquidation notices on the theory that the genuine § 1504(d) deemed liquidations were not subject to protest.  The Federal Circuit ruled that "Like an unlawful actual liquidation, the deemed liquidation can be protested."  *Koyo* at 1243.  This reference to deemed

liquidations in *Koyo* can only be understood to refer to actual liquidations by operation of law where the conditions specified in § 1504(d) have occurred. *Koyo* has nothing to say about erroneous deemed liquidation notices where liquidation by operation of law has not occurred, and therefore is not relevant to the case at hand.

**C. *Cemex* is distinguishable from the case at issue.**

Defendant cites *Cemex* as authority that notice of deemed liquidation is protestable even when erroneous. However, *Cemex* was decided under different statutory language, and addressed an entirely different question, in a case that interacted with the legislative intent of § 1504 in an entirely different way. The Federal Circuit's findings therein are therefore distinguishable and should not be considered dispositive with regard to the contested issue in this proceeding.

The central issue in *Cemex* was whether the Petitioner in an antidumping duty investigation had the right under § 1514 to seek correction by Customs of the antidumping duty rate that it applied to certain unrelated exporters' shipments of subject merchandise. In a previous case, the Petitioner had successfully obtained a judgment from the CIT, affirmed by the Federal Circuit, that substantially increased the antidumping duty rate applicable to entries during a particular administrative review time period, including entries exported by *Cemex*. *See Cemex,* 384 F.3d at 1316. No writ of certiori was filed with the Supreme Court, and accordingly the judgment became final and the statutory injunction suspending liquidation was lifted, satisfying the first condition in § 1504(d). *Id.* Notice of the lifting of suspension was issued by Commerce to Customs via email, but was issued several days before the statutory injunction was lifted and was not posted publicly by Customs; thus, while notice of lifting of suspension occurred, it did not meet the Federal Circuit's requirement that such notice be "unambiguous and

public." *Id*. at 1316, 1321.  Although Customs timely liquidated almost all entries in accordance

with the notice, 140 entries imported by Cemex were not liquidated within 6 months after the

lifting of suspension of liquidation.  *Id*. at 1316.  Port officials eventually realized this and, on

advice from Customs Headquarters, posted notice on April 6, 2001 that the entries had liquidated

by operation of law in September 1998, six months after the date of the notice of lifting of

suspension.  The Petitioner, upon discovering the existence of the deemed liquidation in

February 2002 and the implication for refunds of duties to domestic producers under the Byrd

Amendment, requested that Customs reliquidate in accordance with the Commerce instructions

in December 2002, and upon their failure to do so filed a motion with the CIT in the original case

to enforce its judgment as to the entries in question in April 2003. *Id*.  The CIT ruled that the

Petitioner had no remedies available to it, and the Petitioner appealed.

The Federal Circuit affirmed the CIT's ruling that the Petitioner had no basis for recourse

to the CI, ruling that domestic producers do not have the right to contest liquidation of entries via

§ 1514(a),[9] and that although the liquidation instructions "were not unambiguous or public" and

therefore "could not, and did not, start the six-month clock for deemed liquidation under 19

U.S.C. § 1504(d),"[10] Customs' "decision to acknowledge that liquidation, deemed or otherwise,

had occurred falls within the purview of section 1514(a) and is, therefore, 'final and conclusive

on *all* persons.'"[11]  Accordingly, the Federal Circuit ruled that the Petitioner waited far too long

to attempt to enforce the underlying judgment and had no remedies as a result.

This opinion is distinguishable from the case at hand in several fundamental ways.  First,

with regard to the entries in *Cemex,* suspension of liquidation *was* lifted, and notice of lifting of

---

[9] *Cemex* at 1323.
[10] *Id*. at 1321.
[11] *Id*. at 1323.

suspension *was* given, and Customs failed to act in accordance with that notice.  The only defect in the process was the fact that Commerce issued the notice a few days early and Customs failed to post it publicly, such that the notice did not satisfy the Federal Circuit's requirement that it be "unambiguous and public."  By contrast, with regard to the instant Entries, suspension has *not* been lifted, *no* notice whatsoever of lifting of suspension has been provided by Commerce, and therefore there was no notice for Customs to fail to act upon.  *Cemex* features a case in which all three conditions of deemed liquidation were present but one was imperfectly executed; this is a case in which no conditions of deemed liquidation have occurred.

Second, the Federal Circuit in *Cemex* applied § 1520(d) in a manner consistent with its stated intent "to *give importers finality* as to their duty obligations by providing for deemed liquidation at the rate claimed by the importers, unless actual liquidation occurred within specified time limits." *Id*. at 1318 (quoting the CIT opinion at 1360 with added emphasis).  The Federal Circuit expressly noted that to allow domestic producers to seek additional duties so long after the fact would run directly counter to that purpose of § 1520(d).  *Id*.  By contrast, this case does not implicate the legislative intent of § 1504 to provide finality to the importer in the face of failure by CBP to timely liquidate entries, because the time to liquidate the entries has not yet arrived; Fraserview does not yet have any interest in finality.

Third, *Cemex* is simply not about the protestability of an erroneous notice of deemed liquidation.  It is about the ability of domestic producers to contest, nearly four years after the fact, duty rates applied to an unrelated importer's entries.  As such, the Federal Circuit expressly declined to reach the question of whether deemed liquidation had actually occurred,[12] and did not

---

[12] *Id*.

address the question of whether the *importer* could have filed a protest within 90 days after the notice of deemed liquidation.

Finally, even if it could be said based on *Cemex* that the importer in that case had the ability to protest, such a result cannot be extrapolated to the instant case because *Cemex* was decided under a different version of 19 U.S.C. § 1514 than exists today.  In 2001, when the notice of deemed liquidation in *Cemex* was posted, § 1514 provided that protests must be filed within 90 days after but not before "notice of liquidation or reliquidation," whereas the current version of § 1514(c)(3)(A) states that protests must be filed within 180 days after but not before "date of liquidation or reliquidation."  This difference raises the possibility that a notice of deemed liquidation posted prior to 2004 might have been ripe for protest beginning with the date of the notice, irrespective of the validity thereof, whereas the filing period for protests today does not begin until on or after the date of *liquidation* itself, which could lead to very different results.

**D.  *Alden Leeds II* is nonprecedential and lacks persuasive reasoning, and should be disregarded as a result.**

Defendant also cites to *Alden Leeds II* as support for its position that protest was available with regard to the Entries.  See Motion to Dismiss at 17-19.  However, *Alden Leeds II* is a non-precedential decision, and because its reasoning is unpersuasive, should be disregarded by this Court.

**1.  *Nonprecedential opinions are to be considered only to the extent that they provide "guidance or persuasive reasoning."***

The Federal Circuit issued its opinion in *Alden Leeds II* as a nonprecedential decision pursuant to Federal Circuit Rule 32.1, which provides that "an opinion or order which is designated as nonprecedential is one determined by the panel issuing it as not adding significantly to the body of law."  *See* Federal Circuit Rule 32.1(b).  While parties are not

prohibited or restricted from citing nonprecedential dispositions, the Rule expressly states that the Federal Circuit's own nonprecedential decisions will not be given the effect of binding precedent, and may be looked to only "for guidance or persuasive reasoning."  Rule 32.1(d).

The Federal Circuit has declined to follow nonprecedential decisions where the nonprecedential decision's reasoning conflicts with that of other cases or is otherwise unpersuasive, and has upheld the right of lower courts to do so as well.  *See, e.g., Greenstreet v. Social Security Admin.*, 543 F.3d 705 (Fed. Cir. 2008) (declining to rely on a nonprecedential Federal Circuit decision that the court found not to be "persuasive."); *27-35 Jackson Ave. LLC v. United States*, 162 Fed. Cl. 550 (2022) ("As Federal Circuit Rule 32.1 states, the Court only considers nonprecedential or unpublished dispositions by the Federal Circuit to the extent that they may provide 'guidance or persuasive reasoning.'"). This Court has adopted the Federal Circuit's rule with regard to approach to nonprecedential decisions.  *See, e.g., Trendium Pool Products, Inc. v. United States,* 399 F. Supp. 3d 1335, 1342 fn 2 (Ct. Int'l Tr. 2019).

In *George v. McDonough*, 991 F.3d 1227 (Fed. Cir. 2021), the Federal Circuit considered appellants' arguments that changes to a regulation should be applied retroactively to authorize their claims.  *George*, 991 F.3d at 1229.  In the underlying case before the Court of Appeals for Veteran Claims, appellants argued that although previous Federal Circuit cases held that a decision of that nature cannot arise from a subsequent change in interpretation of law, the court should follow a more recent, nonprecedential Federal Circuit case that interpreted a core precedent in a manner that argued it did allow for reversal where a regulation is subsequently invalidated.  *Id*. at 1231.  The Veterans Court determined that it was not bound by the nonprecedential case, which "contradicted the reasoning of" earlier, on-point precedential Federal Circuit decisions, and which the Veterans Court determined would lead to a result that

would "contravene the law on finality of judgments."  *Id.*  The Federal Circuit held, "as the

Veteran Court did," that it was not bound by the nonprecedential case, noting that the

nonprecedential decision was issued after the binding precedential cases, and that it had

expressly denied a motion to reissue the nonprecedential decision as precedential.  *Id*. at 1236.

### 2.   *Alden Leeds II misinterprets and overlooks earlier caselaw and as such is not persuasive.*

*Alden Leeds II* contradicts or misapplies earlier caselaw and fails to address relevant

statutory language; as such, it lacks persuasive reasoning.  First, as discussed in Section V.B,

*supra* at 15*,* the Federal Circuit in *Alden Leeds II* mistook the facts of the case in *LG Electronics*,

and as a result dismissed that case as irrelevant when it was in fact exactly on point.  *See Alden*

*Leeds II*, 476 Fed. Appx. 393, 399 fn 3.  The court also did not the restrictive language in §

1514(c)(3) that restricts the situations in which the protest window begins with the "date of the

decision" to those in which the date of liquidation or reliquidation is "inapplicable," and

therefore did not reconcile its holding that the notices of liquidation could be protested from the

"date of decision" with that restrictive statutory language.  That omission, in turn, may have been

due to the court's failure to follow its own ruling that the entries "were not actually deemed

liquidated by operation of law" to its inescapable conclusion, and did not expressly acknowledge

that because the entries did not liquidate by operation of law, they in fact had not liquidated at

all.

### IX.   If Protest Is Found To Be Available Upon Actual Liquidation of the Entries, Such Protest Would Be Manifestly Inadequate.

Even where jurisdiction under 28 U.S.C. § 1581(a) is theoretically possible, this Court

will still have jurisdiction under § 1581(i) if the remedy provided under § 1581(a) is "manifestly

inadequate."  *See International Customs Products*, 467 F.3d 1324, 1327 (quoting *Norcal/Crosetti*

*Foods Inc. et.al v. United States et. al,* 963 F.2d 356, 359 (Fed. Cir. 1992).  A remedy that is

manifestly inadequate is "an exercise in futility, or incapable of producing any result; failing

utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *ARP Materials*, 47

F.4th at 1379.

CBP has stated that it considers its designation of the Entries as deemed liquidated, while

erroneous, to be final.  It has further stated that it considered the protest window for this

"decision" to have commenced as of the date that the erroneous notice was posted, and therefore

to be closed.  It is clear from this that if Fraserview did file a protest upon liquidation of the

Entries, CBP would reject it as untimely.  Accordingly, protest is a manifestly inadequate

remedy, and § 1581(i) jurisdiction is available as a result.


**X.   <u>Conclusion</u>**

On the basis of the foregoing evidence and authority, Fraserview respectfully submits

that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i), because the

contested issue is not protestable under 19 U.S.C. § 1514 and therefore jurisdiction is not

available under 28 U.S.C. § 1581(a).  It is undisputed that the Entries are not deemed liquidated,

and since CBP has not affirmatively liquidated the entries either, they remain unliquidated.

Decisions as to liquidation, including deemed liquidations, are protestable under § 1514(a)(5)

only where liquidation has actually occurred; because the Entries are unliquidated, they are not

protestable decisions described in § 1514(a)(5).  The erroneous designation of the Entries as

deemed liquidated is a mistake of law rather than a clerical error, mistake of fact or other

inadvertence and therefore is not protestable on that basis either; even if it were a clerical error,

mistake of fact or other inadvertence, such events are only protestable after liquidation of the

affected entries.  Moreover, even if the contested issue is theoretically protestable under 19

U.S.C. § 1504(a), such protest could not be filed until the date of liquidation, and therefore protest as a remedy is not yet available.  In that event, the possibility of a future opportunity to protest the Entries when they do in fact liquidate is a manifestly inadequate remedy, because CBP has already stated in writing that it considers its erroneous notices of deemed liquidation final and conclusive and that it further considers the protest window to be closed with regard thereto.

Accordingly, Fraserview requests that the Court find that jurisdiction pursuant to 28 U.S.C. § 1581(i) is proper, and further requests that the Court deny Defendant's Motion to Dismiss.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Fraserview Remanufacturing Inc.*

January 12, 2023

**WORD COUNT CERTIFICATE OF COMPLIANCE**

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(1), the undersigned certifies that this brief complies with the court limitation requirement. The word count for Plaintiff Fraserview Remanufacturing Inc.'s Response to Defendant's Motion to Dismiss, as computed by Junker & Nakachi PC's word processing system (Microsoft Word Version 16.56), is 11,872 words.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Fraserview Remanufacturing Inc.*

January 12, 2023